[No. B235259. Second Dist., Div. Four. May 31, 2012.]

In re RYAN K., A Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Respondent, v.
DARLENE F., Defendant and Appellant.

**COUNSEL**

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

**OPINION**

**MANELLA, J.**—In her second appeal following assertion of jurisdiction over her children, appellant Darlene F. (Mother) appeals the order issued after remand summarily denying her petition for modification under Welfare and Institutions Code section 388.[1] We conclude the court erred in concluding that it lacked authority to consider the section 388 petition or change the custody order which was the subject of the prior appeal. Accordingly, we reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

This is the second time this case has been before us. Appellant is the mother of two children: Ryan K., age 10, fathered by Garland K., and Kaitlyn G., age four, fathered by Garrick G. In August 2010, appellant sideswiped Garrick's car when Kaitlyn was in the backseat of her car. Mother was arrested and the children were detained.[2] Mother had a history of anger management issues, particularly with regard to men with whom she had had a failed romantic relationship. At the jurisdictional hearing, Mother's counsel conceded there was a factual basis for jurisdiction, because appellant had been "angry and used poor judgment" in following and approaching Garrick's

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] Initially, the children were both detained with the maternal grandmother. In September, the court released Ryan to Garland, who left the boy with the maternal grandmother until after the jurisdictional and dispositional hearings in October.

car with her own, but contended hitting his car had been an unintentional act.[3] The court sustained jurisdiction under section 300, subdivision (b) (failure to protect), finding that appellant created a detrimental and endangering situation for Kaitlyn by striking Garrick's vehicle while Kaitlyn was a passenger in appellant's vehicle and that appellant's actions placed both children at risk of physical harm.

At the dispositional hearing in October 2010, the Los Angeles County Department of Children and Family Services (DCFS) recommended that the court release Ryan to Garland and terminate jurisdiction pursuant to section 361.2.[4] Counsel for the children objected, as Ryan had been raised by appellant and had had no contact with his father for years. In addition, Garland's decision to leave the boy with his maternal grandmother after the court released him to Garland's custody in September indicated he was not ready to "step[] up to the plate." The court followed DCFS's recommendation and terminated jurisdiction over Ryan, placing legal and physical custody of the boy with Garland.[5] In so doing, the court granted Garland complete discretion over whether Mother would have visitation with Ryan.[6]

On appeal, we reversed with respect to visitation only. We concluded the court had erred in delegating to Garland the power to determine whether visitation would occur at all. We remanded "for the court to formulate an order that provides the parties with better and more specific direction."

---

[3] Both Garrick and Mother had stated that Mother had hit the car accidentally as she was rolling down the passenger window in order to continue an argument with Garrick that had begun during an exchange of Kaitlyn.

[4] Section 361.2 provides when a court orders removal of a child from his or her custodial parent, the court shall determine whether there is a parent, with whom the child was not residing, who desires to assume custody. "If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a).) The court "may" at that point retain jurisdiction and order reunification services for the parent from whom the child was removed, or it "may" order the former noncustodial parent to become the legal and physical custodian of the child and terminate jurisdiction over the child. (§ 361.2, subd. (b)(1) & (3).)

[5] Under section 362.4, the juvenile court may, when it terminates jurisdiction over a case, issue an order "determining the custody of, or visitation with, the child." The juvenile court's section 362.4 order may be enforced or modified by the family court. (§ 362.4; *In re Chantal S.* (1996) 13 Cal.4th 196, 208–209 [51 Cal.Rptr.2d 866, 913 P.2d 1075]; *In re Kenneth S., Jr.* (2008) 169 Cal.App.4th 1353, 1358 [87 Cal.Rptr.3d 715].) Custody and visitation orders issued under section 362.4 are sometimes referred to as "family law" orders or "exit" orders. (See *In re Chantal S., supra,* at p. 202; *Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300 [55 Cal.Rptr.3d 647].)

[6] The court retained jurisdiction over Kaitlyn, and appellant was accorded unmonitored visitation and reunification services with respect to her. By the time of the jurisdictional/dispositional hearings, Mother had enrolled in counseling and domestic violence and anger management programs. In addition, she had completed a parenting class.

On June 27, 2011, after the remittitur issued, the juvenile court reinstated jurisdiction with respect to Ryan, and set a hearing for July 18, 2011, for issuance of a "new family law order . . . as ordered by the court of appeal." At the June 27 hearing, the court stated: "I'm reinstating jurisdiction to follow the order of the court of appeal. And that is all I'm going to be doing on that date."

In July, Mother filed a lengthy section 388 petition. According to the evidence presented, Ryan was being neglected by Garland. After nearly a year of custody, Garland had not obtained a bed for the boy, leaving him to sleep on the floor, although Garland's younger child had a bed. Mother also presented evidence that Garland was neglecting the boy's hygiene by not having him regularly shower or bathe. In addition, Ryan had missed 20 days of school since being placed with Garland and had fallen so far behind academically he was in danger of failing the fourth grade. Garland had not spoken to Ryan's teacher and did not appear to be otherwise addressing Ryan's academic problems. In May, Garland had neglected to pick Ryan up after school, leaving him there for hours while maternal relatives—who were not allowed to take him home because Mother was not the custodial parent—waited with him. Ryan wrote a letter to the court stating that he missed Mother and his sister and requesting return to Mother's custody.[7] Moreover, Garland had exercised the absolute discretion over visitation granted him by the court by denying Mother and maternal relatives visitation with Ryan. Mother was able to spend time with her son only by volunteering in his classroom. Despite the separation, Mother continued to attempt to provide for Ryan, buying books, clothing and shoes for him.

The court summarily denied the section 388 petition, stating in its order that "[t]his case has already been affirmed on appeal except for more definite visitation order in the [family law] order" and checking the box on the form to indicate that "[t]he best interest of the minor[] would not be promoted by the proposed change of order."

Prior to the July 18 hearing set to implement this court's ruling, the caseworker reinterviewed Garland and Ryan and prepared an interim review report. Garland claimed that Mother had not contacted him about a visitation schedule but at the same time stated that he stopped allowing maternal relatives to see Ryan because Mother was often in their homes when he brought Ryan for a visit, and he did not want Mother to have unmonitored

---

[7] While the matter was pending on appeal, Mother completed her reunification program and Kaitlyn was returned to her. Kaitlyn expressed sorrow at the separation from Ryan.

visitation. Ryan told the caseworker he wanted to see Mother more often and missed Kaitlyn, but denied wanting to return to Mother's custody. He stated that he liked living with Garland because Garland "lets me do whatever I want like stay up late and stuff." It appeared to the caseworker that Ryan had been coached. The caseworker confirmed that Ryan had no bed and that Garland had allowed Ryan to miss school without good excuse on many occasions. On the day of the interview, there was no food in the refrigerator.[8] DCFS recommended that physical custody be returned to Mother or that the court order joint physical custody.

At the hearing on July 18, the court stated that its authority was limited to making a more specific order with respect to visitation. The court issued a family law order stating "joint legal custody to both Mother and [Garland]," "sole physical custody to [Garland]," and unmonitored visitation for Mother every other weekend and one weekday evening. Mother appealed. DCFS filed a statement of nonopposition, referring this court to the recommendation of the July interim review report. Garland did not file a brief.[9]

## DISCUSSION

■ The issue presented is whether the juvenile court had the power to consider Mother's section 388 petition and/or DCFS's interim report and revisit custody when the case was remanded. In our view, it did.

When the juvenile court first asserted jurisdiction over Ryan, Mother had sole physical custody and Garland had not seen the boy in years. However, Mother had been involved in a dangerous incident involving Kaitlyn, Garland was nonoffending, and DCFS, having reviewed his home and background, had uncovered no reason to object to his having custody of the boy. Under the authority provided by assertion of dependency jurisdiction, the court detained Ryan from Mother, transferred physical custody to Garland, and issued a family law or exit order governing future custody and visitation in October 2010. (See §§ 361.2, 362.4.) We reversed the order in part— the portion covering visitation—and remanded to the juvenile court with directions.

---

[8] The day of the interviews was not the caseworker's first postappeal visit. On the day of the first visit, Garland did not let the caseworker in, stating that Ryan was not there. The next day, the caseworker attempted to call Garland at a number he provided, but it was not a working number.

[9] When no respondent's brief is filed, we "examine the record on the basis of appellant's brief and . . . reverse only if prejudicial error is found. [Citations.]" (*Votaw Precision Tool Co. v. Air Canada* (1976) 60 Cal.App.3d 52, 55 [131 Cal.Rptr. 335].)

"When a judgment is reversed with directions, the appellate court's order is contained in its remittitur, which revests the jurisdiction of the subject matter in the lower court . . . ." (*In re Francisco W.* (2006) 139 Cal.App.4th 695, 704–705 [43 Cal.Rptr.3d 171]; accord, *In re Justin S.* (2007) 150 Cal.App.4th 1426, 1434–1435 [59 Cal.Rptr.3d 376].) Once jurisdiction is revested, a lower court may not, of course, disregard the instructions of the appellate court. " 'The order of the appellate court as stated in the remittitur, "is decisive of the character of the judgment to which the appellant is entitled." ' " (*In re Francisco W., supra,* at p. 705, quoting *Hampton v. Superior Court* (1952) 38 Cal.2d 652, 656 [242 P.2d 1].) In the dependency context, it does not, however, follow that the court may not consider matters that have transpired while the appeal was pending. The dependency scheme exists to protect children from abusive parents, but it also gives parents who have made mistakes a second chance to raise their children. To that end, it requires the juvenile court to undertake "recurrent reviews of the status of parent and child." (*In re Candace P.* (1994) 24 Cal.App.4th 1128, 1132 [30 Cal.Rptr.2d 1].) Indeed, the statutory scheme even permits a juvenile court to adjust its determinations while an appeal of a prior order is pending. (See Code Civ. Proc., § 917.7; *In re Natasha A.* (1996) 42 Cal.App.4th 28, 39–40 [49 Cal.Rptr.2d 332] [juvenile court erred in declining to hold review hearings to consider termination of jurisdiction and issuance of new custody and visitation order while father's appeal of original visitation order was pending].) It follows that "when an appellate court reverses a prior order of the [juvenile] court on a record that may be ancient history to a dependent child, the [juvenile] court must implement the final appellate directive in view of the family's current circumstances and any developments in the dependency proceedings that may have occurred during the pendency of the appeal." (*In re Anna S.* (2010) 180 Cal.App.4th 1489, 1501 [103 Cal.Rptr.3d 889].)

When the prior appeal was noticed, the juvenile court had recently concluded that Mother posed a danger to her children and she had only begun participation in her reunification program. By the time our opinion was filed—eight months after issuance of the contested jurisdictional and dispositional orders—Mother had successfully completed her assigned programs and had been reunited with Kaitlyn. In the meantime, according to Mother's section 388 petition and the caseworker's July report, Garland had demonstrated an inability to competently parent a school-age boy and a lack of consideration for Ryan's most basic needs.

The juvenile court was no doubt concerned that consideration of these matters was foreclosed by the well-established rule that after remand, " '[t]he lower court cannot reopen the case on the facts, allow the filing of amended or supplemental pleadings, [or] retry the case, and if it should do so, the judgment rendered thereon would be void." [Citation.]' " (*In re Francisco W.,*

*supra*, 139 Cal.App.4th at p. 705, quoting *Hampton v. Superior Court, supra*, 38 Cal.2d at p. 656.) The rule refers to attempts to relitigate facts that were before the court at the time of the order or judgment appealed—in this case, the allegations of the jurisdictional petition and the facts that supported the original disposition and decision to terminate. (See *In re Anna S., supra*, 180 Cal.App.4th at p. 1502 ["[A]n appellate opinion . . . reviews ' "the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration" . . . .' "]; *Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 813 [180 Cal.Rptr. 628, 640 P.2d 764] [appellate courts generally "consider only matters which were part of the record at the time the judgment was entered"].) It does not apply to new developments which occurred during the pendency of the appeal. After remand and reinstatement of jurisdiction, Mother was free to file—and the court was free to consider—a section 388 petition for modification, and the court was not constrained from considering new developments when it issued the revised family law order. (See *In re Jasmon O.* (1994) 8 Cal.4th 398, 415 [33 Cal.Rptr.2d 85, 878 P.2d 1297] [§ 388 permits new facts to be brought to the juvenile court's attention at any time during the pendency of the matter].)

Our conclusion is supported by *In re Candace P., supra*, 24 Cal.App.4th 1128, which involved an appeal of an order terminating parental rights. The mother had previously sought writ review of an order terminating her reunification services after 12 months. The Court of Appeal concluded that the juvenile court had terminated services prematurely, and reversed with instructions requiring the order terminating services to be vacated and a new order issued continuing services for an additional six months. At a status hearing that occurred five months after issuance of the writ, the juvenile court found that the mother had made no efforts during that period and, based on this new information, terminated services at the hearing—a month earlier than the Court of Appeal had instructed. The appellate court nonetheless affirmed, concluding the juvenile court's order did not constitute a material variance from the terms of the remittitur. (*Id.* at p. 1132.) The court recognized that in determining how to comply with a remittitur in the dependency context, "it is necessary that the order 'be read in conjunction with the appellate opinion as a whole' [citation] and . . . that the order be considered in the framework of the statutory scheme to which it relates." (*Ibid.*)

We find further support in *In re Roger S.* (1992) 4 Cal.App.4th 25 [5 Cal.Rptr.2d 208]. There, prior to the assertion of dependency jurisdiction, a family court placed a young boy in the custody of his mother and allowed the

father, who was suffering from brain damage, monitored visitation only. After several years of dependency supervision, which varied the visitation schedule but required the father's visits to remain monitored, the court held a hearing to consider termination of jurisdiction. The father, supported by the case-worker, sought to present evidence to support a change in the juvenile court's latest visitation order. The court refused to consider the evidence, believing the only issue properly before it was whether continued dependency supervision was necessary. The appellate court reversed, explaining that because "the trial court had the parties before it for the specific purpose of assessing progress and determining whether judicial intervention could be withdrawn" and had "chose[n] to exercise its power to make a termination order," the court "erred . . . in refusing to consider the father's evidence on visitation, closing its eyes to the recommendations of the case worker, and finding it was compelled to adopt the existing seven-month-old visitation order without change." (4 Cal.App.4th at p. 30; accord, *In re John W.* (1996) 41 Cal.App.4th 961, 972–973 [48 Cal.Rptr.2d 899] [court's power to issue family law order under § 362.4 "required it to make an informed decision concerning the best interests of the child" and precluded it from refusing to hear relevant evidence].)[10]

In short, although our prior opinion and order dealt with only a narrow component of the court's prior orders—visitation—our limited holding did not deprive the juvenile court of the authority to act in the best interests of Ryan when it reasserted jurisdiction after remand and revisited its final custody and visitation order. The juvenile court erred in declining to consider whether a change in custody would best serve Ryan's interests based on the evidence presented by Mother and DCFS. Accordingly, we reverse the order summarily denying Mother's section 388 petition and the family law order reinstating a potentially outdated custody and visitation plan. We remand to permit the court to determine, after notice and hearing to all parties, where Ryan's best interests lie.

## DISPOSITION

The order denying Mother's section 388 petition and the family law order issued under section 362.4 is reversed. The matter is remanded for a hearing

---

[10] To the extent the juvenile court assumed a family law court was the better forum to consider these matters, the appellate court stressed: "Although both the family court and the juvenile court focus on the best interests of the child, the juvenile court has a special responsibility to the child as *parens patriae* and must look at the totality of the child's circumstances. . . . By empowering the juvenile court to issue custody . . . orders, the Legislature has expressed its belief that 'the juvenile court is the appropriate place for these matters to be determined . . . .' " (*In re Roger S., supra*, 4 Cal.App.4th at pp. 30–31, quoting Seiser, *Custody and Restraining Orders in the Juvenile Court* (Aug. 1990) Family Law NewsAlert (Cal.Ed.) 4, 8.)

on Mother's section 388 petition and reconsideration of the custody and visitation plan.

Willhite, Acting P. J., and Suzukawa, J., concurred.