Filed 6/19/13  In re L.E. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re L.E., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B244880 (Super. Ct. No. J068635) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY,  Plaintiff and Respondent,  v.  B.E.,  Defendant and Appellant. | |

B.E., the father of L.E., a dependent child (Welf. & Inst. Code, § 300, subd. (b)),[1] appeals orders of the Ventura County Juvenile Court which grant the Ventura County Human Services Agency (HSA) supervision over his custody and visitation of L.E.  We conclude, among other things, that:  1) a Court of Appeal decision, which reversed a jurisdictional finding that B.E. engaged in "inappropriate sexual boundaries" with L.E., did not terminate the juvenile court's jurisdiction to place limits on B.E.'s custody and visitation rights based on the child's best interests; and 2) substantial evidence supports the juvenile court's orders.  We affirm.

---

[1] All statutory references are to the Welfare and Institutions Code.

FACTS

L.E. was born in September 2002. B.E. is his father. In February 2011, L.E.'s parents divorced and shared custody of L.E.

In 2011, L.E.'s mother brought L.E. to a hospital claiming B.E. had sexually assaulted him. The hospital referred the matter to the Los Angeles County Department of Children and Family Services (DCFS).

B.E. told a "hospital social worker" that "he had been naked in front of his son, but had never been inappropriate with him."

In March 2011, DCFS filed a section 300 petition alleging that B.E. sexually abused L.E. "by placing [his] nude body and penis against [L.E.'s] buttocks." Following a detention hearing, "the court found a prima facie case had been established" under section 300, subdivisions (b) and (d).

In April 2011, DCFS filed "an amended section 300 petition," alleging L.E.'s mother had tested positive for drugs which endanger L.E.'s "physical well-being and put him at risk of physical harm." (§ 300, subd (b).) L.E. was placed with his maternal grandmother.

The Los Angeles County Juvenile Court held a "contested adjudication trial." In June 2011, the court struck the DCFS sexual abuse allegation. But it sustained the petition against B.E. on the ground that he "exhibited seriously inappropriate behavior and inappropriate sexual boundaries with his child in his home." The court said B.E. "has no problem at all with the fact that he walks around his house, naked." The court found L.E. "was suffering from severe emotional damage, and that there were no reasonable means to protect him without removal from [B.E.'s] custody." B.E. was ordered "to participate in counseling to address 'sexual boundaries.'" On July 13, 2011, B.E. appealed.

On October 7, 2011, L.E.'s mother filed a section 388 petition. She alleged that she had enrolled in an "in-patient program in Ventura County" and "the court returned [L.E.] to her care." She requested the Los Angeles County Juvenile Court to transfer jurisdiction "to Ventura county." The court granted the petition and transferred the case to

2

Ventura County. The Ventura County Superior Court accepted the transfer on January 19, 2012.

On March 22, 2012, HSA filed an "acceptance of transfer report." It recommended that Family Maintenance (FM) services be provided to the mother and family reunification services be provided to B.E. After a hearing, the Ventura County Juvenile Court ordered HSA to provide FM services to the mother and family reunification services to B.E. It said that "[f]actors contributing to the continued court dependency of the child" include the mother's need "to complete drug counseling."

On June 7, 2012, the Court of Appeal, Second District, Division Eight reversed the Los Angeles County Juvenile Court's jurisdictional findings against B.E. It held the sexual abuse jurisdictional finding was not supported by substantial evidence. It also reversed the order removing L.E. from B.E.'s custody. It said, "Here, DCFS has cited no case, and our independent research has found none, in which dependency jurisdiction was based exclusively on the fact that a parent walked around the family home nude in the presence of a same sex child."

After reviewing the decision, HSA recommended that the juvenile court dismiss the dependency case. But L.E.'s attorney objected. The attorney said L.E. "is resistant to unsupervised visits" with his father. He was concerned about the impact those visits would have on L.E.'s well-being.

HSA changed its position and recommended that it should maintain authority to monitor the visits. It had received an assessment from L.E.'s therapist who said L.E. did not want to be alone with his father. That psychologist noted that L.E. experienced such anxiety about visits with his father that L.E. should receive treatment from "Therapeutic Behavioral Services."

The juvenile court ruled that it had continuing jurisdiction and the appellate decision did not prevent it from making appropriate orders relating to L.E.'s well-being.

HSA recommended that B.E. should receive increased visitation time with L.E. At a contested hearing on September 11, 2012, an HSA worker testified that L.E. was not ready to spend a "whole weekend" with his father and was "uncomfortable" spending

3

nights with his father. The court heard additional testimony from the parents and received medical assessments about L.E.'s mental health and severe emotional problems.

The juvenile court found expansion of B.E.'s visitation was appropriate, but it should proceed cautiously given L.E.'s current mental and emotional condition. It found that proceeding too quickly with unrestricted visitation would be harmful to L.E.'s well-being. It ruled: 1) "The child shall remain in or be released to the physical custody of the mother and father under the supervision of [HSA]," 2) "[v]isitation between the child and the father shall be consistent with the well-being of the child and as arranged by [HSA]," 3) the father shall receive "not less than three unsupervised visits per week of four hours each," 4) "[HSA] shall provide Family Maintenance services to the child and the parents until the next hearing," 5) "[t]he parents shall comply with and participate in the [HSA] Case Plan . . . including any ongoing treatment program," and 6) "[HSA] has discretion to liberalize visitation between the father and L.E. to include overnights on days during the week and for weekends." The court set a six-month review hearing. B.E. appealed these orders.

DISCUSSION

*The Court's Actions after Reversal of the Jurisdictional Finding against B.E.*

B.E. notes that the June 7, 2012, Court of Appeal decision reversed the jurisdictional finding that he sexually abused L.E. and the order that removed L.E. from his custody. He contends that on remand this decision precluded the juvenile court from maintaining further jurisdiction or considering new evidence about L.E.'s condition. He argues the court erred by considering new evidence, by subjecting his visitation rights to HSA's continuing supervision, and by denying his right to immediate and unrestricted "overnight visitation and shared custody."

HSA notes the judgment the Court of Appeal reversed was entered on June 14, 2011. It claims: 1) the juvenile court properly retained jurisdiction to decide L.E.'s best interests, and 2) it correctly considered evidence about L.E.'s well-being during the period when the case was on appeal. We agree.

The reversal of the jurisdictional finding against B.E. did not divest the juvenile court of jurisdiction over L.E. L.E. was a dependent child subject to the court's

4

jurisdiction based on a separate jurisdictional finding of drug abuse by his mother. (§ 300. subd. (b).) The court may properly decide not to dismiss the proceeding until after it determines whether such action would be "detrimental to the child." (*In re Austin P.* (2004) 118 Cal.App.4th 1124, 1134-1135*; In re Francecisco* (1971) 16 Cal.App.3d 310, 314.)

"'[A]n appellate opinion . . . reviews '"the correctness of a judgment as of the time of its rendition . . . ."'"' (*In re Ryan K.* (2012) 207 Cal.App.4th 591, 598.) "It does not apply to new developments which occurred during the pendency of the appeal." (*Ibid.*) "'[W]hen an appellate court reverses a prior order of the [juvenile] court on a record that may be ancient history to a dependent child, the [juvenile] court must implement the final appellate directive *in view of the family's current circumstances and any developments in the dependency proceedings that may have occurred during the pendency of the appeal.*'" (*Id.* at p. 597, italics added.)

The facts regarding L.E.'s condition post-judgment (after June 14, 2011) were not before the Court of Appeal. The Court of Appeal reversed findings involving B.E., but it did not limit the juvenile court's jurisdiction over L.E. In fact, the court affirmed the remaining orders of the juvenile court which included an April 13, 2011, order that L.E. receive mental health treatment. It did not set aside the juvenile court's finding that L.E. had "severe emotional" problems. In addition, it did not preclude the juvenile court from considering facts that occurred while the case was on appeal. Consequently, the appellate decision "did not deprive the juvenile court of the authority to act in the best interests of [the child] when it reasserted jurisdiction after remand . . . ." (*In re Ryan K.*, *supra*, 207 Cal.App.4th at. p. 599.)

B.E. suggests the juvenile court ignored the Court of Appeal decision and decided to re-litigate the case as if the decision never existed. We disagree.

The juvenile court reviewed the appellate decision to make sure its proceedings would conform to it. It followed the decision by ruling that the sexual abuse jurisdictional finding against B.E. was "not true" and that the removal order was "reversed." B.E. has made no showing that the court relied on any of the evidence about sexual abuse which had previously been admitted in the Los Angeles County Juvenile Court proceedings.

5

Moreover, the court correctly recognized its continuing duty "to make orders that are consistent with what should be done" for L.E.. "[T]he purpose of any dependency hearing is to determine and protect the child's best interests." (*In re Luke M.* (2003) 107 Cal.App.4th 1412, 1425.)

The juvenile court had valid grounds to be concerned about L.E.'s well-being during visits with B.E. HSA presented a June 18, 2012, letter from Dr. Sevet Johnson, a treating psychologist, who stated, "In individual therapy sessions [L.E.] has consistently stated, 'I don't want to be alone with my dad, because I'm scared he might hurt me again.'" Johnson noted that when L.E. was informed he "would be going back to court to address the type of visits he would have with his father, he . . . had an increase in acting out behaviors (such as screaming and hitting others) in the home and school environments." Because of this, L.E. had to receive "Therapeutic Behavior Services." L.E. was being treated for "anxiety." Johnson said L.E. was "worried about what would happen to him after court."

Moreover, HSA suggests B.E. is estopped to claim the juvenile court erred by not immediately terminating HSA's monitoring authority over visitation. It notes that on July 18, 2012, B.E. and the other parties agreed to a plan to: 1) continue HSA's current "visitation schedule," 2) to allow HSA to continue to review whether there should be an increase in overnight and unsupervised visits, and 3) to have a new therapist conduct a further "forensic assessment" of L.E. The court approved this plan and scheduled a review. After a contested hearing, it approved HSA's recommendations and ruled HSA had discretion to "liberalize visitation between the father and the child." B.E. has not shown that the court either acted outside its authority or that it abused its discretion.

*Substantial Evidence*

HSA contends the juvenile court's orders are supported by the record. It claims they were reasonable because: 1) the court moved toward the goal of unsupervised visits, but 2) it proceeded cautiously based on substantial evidence that moving too quickly would harm L.E.. We agree.

B.E. cites to evidence that he claims supports his position. But the issue is not whether some evidence supports his claims, it is whether substantial evidence supports the

6

judgment. (*In re A.S.* (2011) 202 Cal.App.4th 237, 244.) In reviewing the sufficiency of the evidence, we do not weigh the evidence or decide credibility of the witnesses as that is a matter for the trier of fact. (*Ibid.*)

There is evidence that expanding the visits was a goal that should proceed with caution. HSA worker Sonia Hernandez-Franco testified L.E. was receiving unsupervised visits with B.E. She recommended that B.E. should receive a total of three "4-hour" visits during the week. She felt L.E. could spend "part of Saturday" and "part of Sunday with his father." But she determined that L.E. was not prepared to spend "the whole weekend" with B.E. L.E. told her he is "uncomfortable" spending the night with B.E. She said, "[H]e's not ready." Before going on visits with his father, L.E. experiences "increased anxiety" and "some behavior issues."

Dr. Johnson's September 7, 2012, assessment reflected that L.E. was being treated for depression. The trial court could reasonably infer that his father's actions were interfering with his therapy and having a disruptive impact on L.E.'s well-being. Johnson said, "In individual therapy sessions, in the last 3 months [L.E.] has increased regression and withdrawal as evidenced by refusing to meet with TBS Specialists and stating that, 'My dad doesn't want me to talk to you.'" L.E. said the "new visitation arrangements" were causing him to experience "anxiety." Johnson concluded this anxiety was increasing L.E.'s depression and was having a negative impact on his mental health. She said that L.E. "has shown increased anxiety as evidenced by fleeing environments or situations when overwhelmed, shutting down and refusing to engage in therapy sessions, and expressing worry about what would happen if father learned of his verbalizing himself in sessions." L.E. "has shown increased depressive symptoms such as expressing hopelessness and low self-worth."

B.E. testified L.E. "needs therapy." He claimed L.E. has "been coached to say things by his mother." But he admitted telling L.E. that at therapy sessions "he doesn't have to talk to anybody anymore." L.E.'s mother testified about the severe emotional impact the visits with B.E. were having on L.E.'s well-being. She said L.E. would complain of headaches, "chew the skin off of his fingers," and vomit before visits with his father. When

7

L.E. returned from those visits, he would become "angry." He would say, "I don't have to follow your rules. I don't have to do my homework." L.E.'s mother said increased visitation with B.E. now was not appropriate because L.E. was "out of control" and that it should wait "until [L.E. was] more stable in therapy."

The trial court found, "We're moving to more time with dad, but I think it would be harmful to just simply switch everything up at this point . . . without getting more therapy in place, getting [L.E.] more stabilized." "'Although a parent's interest in the care, custody and companionship of a child is a liberty interest that may not be interfered with in the absence of a compelling state interest, the welfare of a child is a compelling state interest that a state has not only a right, but a duty, to protect.'" (*In re Luke M.*, *supra*, 107 Cal.App.4th at p. 1423.) "The state's compelling interest in protection requires the court to focus on the child's placement and well-being, rather than on a parent's custody challenge." (*Ibid.*) In making its orders, the juvenile court may properly consider the emotional harm suffered by the child. (*Id.* at pp. 1425-1426.) B.E. has not shown the evidence is insufficient to support the court's orders. Nor has he shown any abuse of discretion.

We have reviewed B.E.'s remaining contentions. He raises some issues that were not raised in the trial court and consequently waived. As to his remaining contentions, we conclude he has not shown error.

The orders are affirmed.

NOT TO BE PUBLISHED.


GILBERT, P.J.

We concur:


YEGAN, J.


PERREN, J.

8

Tari L. Cody, Judge

Superior Court County of Ventura

_____


Maureen L. Keaney, under appointment by the Court of Appeal, for Defendant and Appellant.


Leroy Smith, County Counsel, Oliver G. Hess, Assistant County Counsel, for Plaintiff and Respondent.