Filed 1/12/21 In re Amira A. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re AMIRA A. et al., Persons Coming Under the Juvenile Court Law. | B301682 (Los Angeles County Super. Ct. No. DK10281A-B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | **ORDER MODIFYING OPINION** |
| Plaintiff and Respondent, | **[NO CHANGE IN JUDGMENT]** |
| v. | |
| HANIA A., | |
| Defendant and Appellant; | |
| MARIA T., | |
| Respondent. | |

THE COURT:

It is ordered that the opinion filed herein on December 29, 2020, be modified as follows:

On page 2, the first full paragraph is deleted in its entirety and the following paragraph is inserted in its place:

Daniel G. Rooney for Defendant and Appellant.

There is no change in the judgment.

_____

LUI, P. J.          ASHMANN-GERST, J.          CHAVEZ, J.

Filed 12/29/20  In re Amira A. CA2/2 (unmodified opinion)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re AMIRA A. et al., Persons Coming Under the Juvenile Court Law. | B301682 (Los Angeles County Super. Ct. No. DK10281A-B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>HANIA A.,<br><br>        Defendant and Appellant;<br><br>MARIA T.,<br><br>        Respondent. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Steven E. Ipson, Judge Pro Tempore.  Affirmed.

Daniel G. Rooney, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, and David Michael Miller, Deputy County Counsel, for Plaintiff and Respondent.

Liana Serobian, under appointment by the Court of Appeal, for Respondent.

_____

Hania A. (father) appeals an order granting full legal and physical custody of Noah A. (Noah) to Maria T. (mother), allowing mother to move Amira A. (Amira)[1] and Noah (collectively minors) to Minnesota,[2] and restricting father's visitation. He contends that the order must be reversed because he was denied procedural due process. Because he has not demonstrated that he preserved the issue for review, or that he suffered prejudice, we affirm.

_____

[1]    Amira is sometimes referred to as Amirah in the appellate record.

[2]    The juvenile court did not expressly rule that mother could move minors to Minnesota. At most, its orders gave mother implied permission. An implied order in a juvenile dependency case can be reviewed on appeal. (*In re Kristin W.* (1990) 222 Cal.App.3d 234, 246.)

**FACTS**

**Background**

The Department of Children and Family Services (Department) filed a petition pursuant to Welfare and Institutions Code section 300, subdivisions (a), (b) and (j)[3] on behalf of minors. After it was amended by interlineation and certain counts were dismissed without prejudice, it alleged that minors were exposed to a risk of harm due to father's mental state, his use of inappropriate physical discipline, and his history of domestic violence with mother.

The petition was sustained on December 16, 2015.

**The Contested Review Hearing**

The juvenile court held a contested section 364 review hearing review on January 6, 2017, April 14, 2017, April 26, 2017, May 4, 2017, June 1, 2017, January 24, 2018, June 8, 2018, August 17, 2018, August 24, 2018, and October 19, 2018. Multiple witnesses testified.

The Department recommended that the juvenile court terminate jurisdiction and grant mother and father joint legal and physical custody of minors. The Department's attorney noted that the case involved allegations of father's inappropriate discipline of Amira, domestic violence, father's 2015 conviction for spousal injury, and father's diagnosis of posttraumatic stress disorder and obsessive-compulsive disorder. When the juvenile court asked if there was a presumption against joint custody in cases involving domestic violence, the Department's attorney stated, "There is, your honor, but the Department believes that . . . based on all the testimony by the therapist and other

---

[3] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

witnesses, that . . . father has been rehabilitated." Per the Department's attorney, the Department did not see the "case as a child safety case but rather a family law dispute between the parents." She stated, "[The Department] believes that there is no child safety concern here. And that the parents need to resolve their differences through Family Court."

Father's attorney joined the Department's argument and asked the juvenile court to follow the recommendation of joint legal and physical custody. Mother's attorney argued that father failed to complete the case plan, there was an ongoing risk of harm, and he should not be given shared custody of the minors. Minors' attorney argued that the juvenile court should grant the parents joint legal and physical custody of Noah and, as to Amira, grant joint legal custody but sole physical custody to mother.

The juvenile court granted mother sole legal and physical custody of Amira, and granted father monitored visits. With respect to Noah, the juvenile court awarded mother and father joint legal and physical custody with the proviso that Noah's primary residence be with mother.[4] The minute order stated that mediation was on January 15, 2019, and a Family Law Order was due on January 18, 2019. It stated, "Termination of jurisdiction is stayed pending the receipt of the Juvenile Custody Order[.]"

**The Continuing and Uncontested Review Hearings; Intervening Incidents**

On June 7, 2019, the parties appeared for the ongoing review hearing. The juvenile court entered the following orders:

---

[4]     Father appealed in case No. B294507. That appeal was later dismissed as moot.

4

"Father is to have monitored visits [once] per week . . . at a [Department] office. . . . The [juvenile court] modifies its prior orders as to . . . Noah to reflect [that mother] . . . [shall] have sole legal and sole physical custody and [f]ather [shall] have monitored visits as reflected above, based upon [f]ather's] conduct in [c]ourt] this date. All prior orders remain in full force and effect as to . . . Amira."[5]

Mother and minors traveled to Minnesota on July 8, 2019. Several weeks later, mother's attorney submitted a walk-on request seeking the juvenile court's approval for mother to move to Minnesota with minors. At an August 16, 2019, hearing, the juvenile court informed the parties that it was inclined to allow mother to move. Father's attorney wanted to argue, and the juvenile court stated, "It is too late to hear the matter now." The matter was continued to August 23, 2019, and then to September 3, 2019. In the meantime, father filed a section 388 petition to change the June 7, 2019, order modifying custody and giving mother sole legal and physical custody of Noah.

On September 3, 2019, the juvenile court denied the section 388 petition because it did not state new evidence or a change of circumstances. The juvenile court indicated that it was inclined

---

[5] The juvenile court later stated: "My recollection of that incident does show that the father certainly acted in a way that was inappropriate. My recollection is he somewhat jerked up out of his seat. Began yelling, lunged in the direction of the mother and her counsel, and was waving and pointing his finger. That's my recollection. [¶] I don't recall the specific words, but the voice was an elevated voice that was hostile towards that part of the table, those persons at that part of the table. I was alarmed by the father's behavior."

5

to allow mother and minors to remain in Minnesota pending a further order.

On September 19, 2019, the parties convened again for the ongoing review hearing. The juvenile court vacated all prior orders. The Department recommended that the juvenile court grant sole legal and physical custody of both minors to mother. Its attorney explained the basis of the recommendation, stating, "[F]ather has not benefited from the programs that he was ordered to do, such as counseling and anger management, as evidenced by the in-court conduct that led the [juvenile court] to vacate findings." The juvenile court stated that its indicated ruling was to grant sole legal and physical custody to mother and monitored visits to father as agreed by mother and father.[6]

No witnesses were called to testify.

Father's attorney argued that father's behavior on June 7, 2019, was a one-time occurrence and stated, "So we believe it would be inappropriate at this time to make the orders that have been made[.]" He asked the juvenile court to set the matter for a hearing to determine if father's outburst in court was an aberration.

Also, father's attorney presented argument, inter alia, regarding visitation and the impact of mother moving the minors to Minnesota. He cited *In re Marriage of LaMusga* (2004) 32

---

[6] "Under section 362.4, the juvenile court may, when it terminates jurisdiction over a case, issue an order 'determining the custody of, or visitation with, the child.' The juvenile court's section 362.4 order may be enforced or modified by the family court. [Citations.] Custody and visitation orders issued under section 362.4 are sometimes referred to as 'family law' orders or 'exit' orders." (*In re Ryan K.* (2012) 207 Cal.App.4th 591, 594, fn. 5.)

Cal.4th 1072 (*LaMusga*) as requiring a court to consider various factors before allowing a custodial parent to move a child away. He requested that mother's move-away issue go to the Family Law Court for a decision.  If the juvenile court was not so inclined, father's attorney requested a continuance of a week or two to consider the matter in light of *LaMusga*.  The juvenile court terminated jurisdiction and granted mother sole legal and physical custody of minors.  It further stated, "I don't believe . . . father has benefited from programs.  Monitored visits to . . . father with any agreed-upon monitor.  If no monitor is agreed upon, a paid professional monitor paid for by . . . father.  [¶]  The [juvenile] court will allow phone calls and Skype calls, a minimum of four times a week."  It ordered the calls to take place at 8:00 p.m. in the time zone in which minors resided.

Father appealed on October 21, 2019, from the denial of his section 388 petition, the order terminating jurisdiction, and the custody orders.  The dates of the orders were December 18, 2018, January 15, 2019, January 18, 2019, March 26, 2019, March 28, 2019, April 12, 2019, May 3, 2019, June 7, 2019, June 20, 2019, August 16, 2019, August 23, 2019, September 3, 2019, September 19, 2019, and September 20, 2019.

**DISCUSSION**

Father contends that the juvenile court denied his right to procedural due process by modifying the custody order, restricting his visitation with minors, and approving mother's move without holding contested hearings. We presume that he contends that due process entitled him to call and cross-examine witnesses before the juvenile court ruled.

**I. Due Process; Standard of Review.**

Under state and federal law, due process entitles a party to notice and an opportunity to be heard. The opportunity to be heard must be at a meaningful time and in a meaningful manner. (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 212.)

Due process requirements vary, "as not every context to which the right to procedural due process applies requires the same procedure. . . . Consequently, due process is a flexible concept, as the characteristic of elasticity is required . . . to tailor the process to the particular need. [Citations.] Thus, not every situation requires a formal hearing accompanied by the full rights of confrontation and cross-examination. [Citation.]" (*Ryan v. California Interscholastic Federation-San Diego Section* (2001) 94 Cal.App.4th 1048, 1072.)

"It is axiomatic that due process guarantees apply to dependency proceedings. [Citations.] Parties to such proceedings have a due process right to confront and cross-examine witnesses, at least at the jurisdictional phase. [Citation.]" (*Ingrid E. v. Superior Court* (1999) 75 Cal.App.4th 751, 756–757.)

The denial of procedural due process is a legal question subject to de novo review. (*Severson & Werson, P.C. v. Sepehry-Fard* (2019) 37 Cal.App.5th 938, 944.) If there is a violation of

due process, reversal is not required if it was harmless beyond a reasonable doubt.  (*In re Enrique G.* (2006) 140 Cal.App.4th 676, 686–687.)

## II.  Modified Custody Order.

Father did not preserve his objection to the modified custody order because he did not raise it below.

"A prerequisite to raising an issue for appellate review is an objection in the trial court. . . .  The rule also requires the objection be made on the same grounds urged on appeal."  (*People v. Derello* (1989) 211 Cal.App.3d 414, 428.)  In *People v. Partida* (2005) 37 Cal.4th 428, 435, the court "held that constitutional arguments raised for the first time on appeal are not forfeited if they do not invoke reasons different from those the trial court was asked to apply, but merely assert that the trial court's act or omission, to the extent erroneous *for the reasons actually presented to that court*, 'had the additional legal consequence of violating' the Constitution.  [Citation.]"  (*People v. Farley* (2009) 46 Cal.4th 1053, 1095.)

In his reply brief, father cites *In re S.B.* (2004) 32 Cal.4th 1287, 1293 & fn. 2 (*S.B.*) to support a theory that he preserved his constitutional objection by consistently raising the issues of visitation, custody and minors' residency, and by opposing the juvenile court's rulings on those matters.  He essentially contends that if he objected to a ruling on one specific ground, that operates as a placeholder so that he can raise any other conceivable ground on appeal.  On page 1293, *S.B.* only states the accepted and unremarkable proposition that the forfeiture rule applies in dependency matters.  (*Id.* at p. 1293.)  Footnote 2 provides:  "Although the loss of the right to challenge a ruling on appeal because of the failure to object in the trial court is often

9

referred to as a 'waiver,' the correct legal term for the loss of a right based on failure to timely assert it is 'forfeiture,' because a person who fails to preserve a claim forfeits that claim. In contrast, a waiver is the ""intentional relinquishment or abandonment of a known right."' [Citations.]" (*Id*. at p. 1293, fn. 2.) Nothing in *S.B.* establishes that a due process objection is preserved when a party objects to or otherwise opposes rulings on other grounds. We therefore conclude that *S.B.* does not aid father's appeal.

## III. Visitation.

Insofar as father suggests that the September 19, 2019, order restricted his visitation without a contested hearing, he has not demonstrated that he objected at the September 19, 2019 hearing to a violation of his procedural due process rights, i.e., a denial of the opportunity to call or cross-examine witnesses. Nor did he demonstrate that he sought a hearing to introduce new evidence. Regardless, he has not attempted to demonstrate that he suffered prejudice. Finally, at the September 19, 2019, hearing, father's attorney had ample opportunity to argue visitation issues.

## IV. Approval of Mother's Move.

Father suggests that he was denied procedural due process because he was not given a separate hearing to present new evidence regarding mother's move. He did not raise a due process objection below, so the issue is forfeited. Nor has he attempted to show prejudice. Also, at the September 19, 2019, hearing, father did not inform the juvenile court that he had new evidence to introduce.

**V. Other Issues.**

To the degree father raises issues other than procedural due process, we have not considered them. In his introduction, he states only that he was denied due process without contested hearings. In his argument, he has just two headings, each of which pertains to due process. Each point should appear under a separate heading or it need not be considered by the reviewing court. (Cal. Rules of Court, rule 8.204(a)(1)(B); *Heavenly Valley v. El Dorado County Bd. of Equalization* (2000) 84 Cal.App.4th 1323, 1345, fn. 17.)

<strong>DISPOSITION</strong>

The orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST


We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ

11