Filed 10/3/22  In re S.B. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re S.B., A Person Coming Under the Juvenile Court Law. | B318391 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. DK13608) |
| Plaintiff and Respondent, | |
| v. | |
| MARIA G., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Pete R. Navarro, Commissioner.  Affirmed.

John P. McCurley, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

Maria G. (Mother) is the mother of S.B., the subject of this juvenile dependency case. In June 2018, the juvenile court terminated Mother's parental rights at a hearing held pursuant to Welfare and Institutions Code section 366.26.[1] On appeal, a divided panel of this court reversed. (*In re S.B.* (July 16, 2019, B291059) [nonpub. opn.].) The majority explained that the juvenile court erred in finding that the parent-child relationship exception to adoption did not apply in this case. We directed the court "to set a new permanency plan hearing for S.B. to determine a permanent plan that does not include the termination of Mother's parental rights." (*Ibid.*)

After remand, the juvenile court held further proceedings and, based on subsequent events, again terminated Mother's parental rights. Mother appealed. She argues that the court erred by doing "the exact thing—terminating parental rights—that this [c]ourt instructed it not to do." We disagree and affirm the order terminating parental rights.

## FACTUAL AND PROCEDURAL SUMMARY

### A.     Factual and Procedural History Prior to *In re S.B.*

In *In re S.B.*, we summarized the factual and procedural history up to the court's termination of parental rights in June 2018 (*In re S.B., supra*, B291059), and we need not repeat that summary here. We briefly note the following facts.

On October 1, 2015, DCFS filed a dependency petition under section 300, subdivision (b)(1), alleging Mother's and S.B.'s father's drug use rendered them unable to provide regular care and

---

[1] Subsequent statutory references are to the Welfare and Institutions Code.

supervision for S.B. and placed the child at risk of serious physical harm and damage. In December 2015, the court sustained the petition and ordered reunification services for Mother, including programs addressing drug and alcohol abuse. DCFS placed S.B. with his paternal grandmother and her husband, who were eventually identified as S.B.'s prospective adoptive parents.

In November 2017, the juvenile court terminated Mother's reunification services and set a hearing to be held pursuant to section 366.26.

In March 2018, Mother filed a request to change court order pursuant to section 388, requesting, among other relief, the juvenile court vacate the order setting the section 366.26 hearing and reinstate reunification services. The court denied the petition.

The section 366.26 hearing took place in June 2018. Mother argued that the parent-child relationship exception to adoption (§ 366.26, subd. (c)(1)(B)(i)) applied and, therefore, the court should not terminate her parental rights. The court rejected the argument, found S.B. adoptable, and terminated Mother's and S.B.'s father's parental rights.

Mother and S.B. appealed.

In July 2019, this court reversed. We concluded that the court erred in finding that the parent-child relationship exception did not apply. The record, we explained, "reveals a strong and close parent-child bond between Mother and S.B., the severing of which would deprive S.B. 'of a substantial, positive emotional attachment such that the child would be greatly harmed.' " (*In re S.B.*, *supra*, B291059.) Because we reversed the order terminating parental rights, we found "it unnecessary to reach the issues raised by the court's denial of Mother's section 388 petition and note[d] that Mother may file a new section 388 petition." (*In re S.B.*, *supra*, B291059.)

3

We concluded with the following disposition: "The orders made at the permanency plan hearing held pursuant to section 366.26 are reversed. The court is directed to set a new permanency plan hearing for S.B. to determine a permanent plan that does not include the termination of Mother's parental rights. Pending that hearing, the court is further directed to enter an order forthwith establishing visitation between Mother and S.B. on terms that will allow Mother and S.B. to maintain their parent-child relationship." (*In re S.B.*, *supra*, B291059.)

We issued our remittitur on September 16, 2019.

## B.    Post *In re S.B.* Events

On October 4, 2019, the juvenile court set a review hearing for December 11, 2019 and a section 366.26 hearing to be held on January 31, 2020. The court also authorized monitored visits between Mother and S.B. twice per week.

In a status review report prepared for the December 11, 2019 hearing, DCFS stated that the "new permanent plan is legal guardianship with the paternal grandparents." At the hearing, the court identified legal guardianship as the permanent plan. The section 366.26 hearing was rescheduled to take place on February 21, 2020.

In a report prepared for the section 366.26 hearing, DCFS continued to identify legal guardianship as the permanent plan with the paternal grandparents as S.B.'s legal guardians.

On February 21, 2020—the date of the section 366.26 hearing—Mother filed a section 388 petition seeking to have S.B. returned to her care with family maintenance services or, alternatively, to reinstate reunification services together with increased visitation. Mother supported the petition with her declaration stating that she has complied with the court's orders

4

and case plan, and has "maintained a drug free lifestyle." The court set a hearing on the petition to take place on April 9, 2020, and continued the section 366.26 hearing to the same date. The hearings were continued several times as a result of conditions related to the COVID-19 pandemic.

On January 8, 2021, the court granted Mother's section 388 petition in part by reinstating reunification services for Mother.

On June 24, 2021, DCFS filed a status review report. According to the report, Mother was not in compliance with court orders and had had no contact with DCFS for some time. Mother did not provide DCFS with proof of enrollment in therapy, as required. Her visits with S.B. became "inconsistent" and "sporadic." Mother canceled in person visits with S.B. after February 2021, and has had no contact with S.B. by any method since April 17, 2021. Mother had five scheduled drug tests between January 16, 2021 and June 10, 2021. She tested positive for amphetamine and methamphetamine on the first test, and was a "no show" for the other four. At some point during the reporting period, Mother sent a text message to the parental grandmother expressing her desire that the paternal grandparents adopt S.B.[2]

---

[2] According to the status report, the text message stated: " 'What do you need to have [S.B.'s] adoption finalized? I want [S.B.] to live the best life she could ever live, and I know she will with you. I don't want her living the life I use[d] to live. I couldn't let her go and why I couldn't stop fighting for her but I really love her[.] I have to make the toughest decision I've ever had to make and do right by her. I never once believed you'd try to do that[;] my judgement was just clouded[.] I was really just upset with myself for allowing this to happen. You have no idea how grateful I am of you and [the paternal grandmother's spouse].' "

The status report further states that the paternal grandparents "have provided love, safety, and guidance to the child. The child loves and respects her grandparents and appreciates all they have done for her. The child is thriving and loves to reside in the home with her younger siblings."

DCFS recommended that the court terminate reunification services, set a section 366.26 hearing, and find adoption to be the appropriate plan.

Mother did not appear at a review hearing held on July 6, 2021. At that hearing, the court terminated Mother's reunification services and set a section 366.26 hearing to be held on November 3, 2021.

In a "last minute information for the court" document filed in August 2021, DCFS reported that it had made numerous unsuccessful attempts to contact Mother at her last known residence in person, by telephone, by text message, and regular mail. The owner of the apartment where Mother had lived informed a social worker that Mother moved away in late June or early July 2021, and that Mother has not responded to his efforts to contact her.

DCFS, in a section 366.26 report, reasserted Mother's lack of contact with S.B. and DCFS, and recommended that the court terminate parental rights.

The court held the section 366.26 hearing on December 15, 2021. Mother participated electronically. She stated that she last visited S.B. in February 2021, and had not been able to visit since then due to "personal problems," including losing her job and being evicted from her home.

DCFS requested the court find that there are no applicable exceptions to adoption and to terminate parental rights. Counsel for the child agreed with DCFS. Counsel for Mother objected to

termination of parental rights and argued in favor of legal guardianship based on the parent-child relationship exception to adoption.

The court found that S.B. is adoptable and that no exception to adoption applies, and terminated parental rights.

Mother timely appealed.

## DISCUSSION

Initially, we note that Mother does not challenge the sufficiency of the evidence of the court's findings that S.B. is adoptable and that no exception to adoption applies. Mother's only contention is that the juvenile court was required to follow the directions specified in our disposition in *In re S.B.*; that is, "to set a new permanency plan hearing for S.B. to determine a permanent plan that does not include the termination of Mother's parental rights." (*In re S.B.*, *supra*, B291059.)

Mother relies on the general rule that "[w]hen a judgment is reversed with directions, the appellate court's order is contained in its remittitur, which revests the jurisdiction of the subject matter in the lower court and defines the scope of the lower court's jurisdiction." (*In re Francisco W.* (2006) 139 Cal.App.4th 695, 704−705.) "Once jurisdiction is revested, a lower court may not, of course, disregard the instructions of the appellate court." (*In re Ryan K.* (2012) 207 Cal.App.4th 591, 597.)

This rule, however, is not inflexible and, in dependency cases, must yield when new developments compel a different result that is in the best interest of the child. (*In re Ryan K.*, *supra*, 207 Cal.App.4th at pp. 597−599.) In *In re Ryan K.*, the juvenile court gave the father of Ryan legal and physical custody of Ryan, and further granted the father "complete discretion over whether [Ryan's mother] would have visitation with Ryan." (*Id.* at p. 594.)

7

On appeal, the Court of Appeal determined that the court's order improperly delegated to the father "the power to determine whether visitation would occur at all," and reversed with a direction " 'to formulate an order [regarding visitation] that provides the parties with better and more specific direction.' " (*Ibid.*)  After the court issued its remittitur, Ryan's mother filed a section 388 petition alleging facts showing that Ryan's father was neglecting Ryan, and a social worker filed a report recommending, based upon particular facts, that physical custody be returned to Ryan's mother, or the court order joint physical custody.  (*Id.* at p. 595–596.)  The court denied the mother's section 388 petition and rejected the social worker's recommendation, stating that its authority was limited to making a more specific order regarding visitation.  (*Id.* at p. 596.)

The Court of Appeal reversed.  The court acknowledged the general rule limiting the trial court's power to the directions given in the remittitur, then explained:  "In the dependency context, it does not, however, follow that the court may not consider matters that have transpired while the appeal was pending. . . . [Citation.]  Indeed, the statutory scheme even permits a juvenile court to adjust its determinations while an appeal of a prior order is pending.  [Citations.]  It follows that 'when an appellate court reverses a prior order of the [juvenile] court on a record that may be ancient history to a dependent child, the [juvenile] court must implement the final appellate directive in view of the family's current circumstances and any developments in the dependency proceedings that may have occurred during the pendency of the appeal.' [Citation.]"  (*In re Ryan K.*, *supra*, 207 Cal.App.4th at p. 597.)

Although the quoted language in *In re Ryan K.* refers to developments "during the pendency of the appeal" (*In re Ryan K.*, supra, 207 Cal.App.4th at p. 597), the court extended and applied

8

this language to allow the juvenile court to consider the mother's section 388 petition and DCFS's recommendation, which were filed and made after the remittitur issued. "In short," the court concluded, "although our prior opinion and order dealt with only a narrow component of the court's prior orders—visitation—our limited holding did not deprive the juvenile court of the authority to act in the best interests of Ryan when it reasserted jurisdiction after remand and revisited its final custody and visitation order. The juvenile court erred in declining to consider whether a change in custody would best serve Ryan's interests based on the evidence presented by [Ryan's] [m]other and DCFS. Accordingly, we reverse the order summarily denying [Ryan's] [m]other's section 388 petition and the family law order reinstating a potentially outdated custody and visitation plan. We remand to permit the court to determine, after notice and hearing to all parties, where Ryan's best interests lie." (*In re Ryan K.*, *supra*, 207 Cal.App.4th at p. 599.)

Here, the juvenile court did what the juvenile court should have done in *In re Ryan K.*: The court considered events that occurred after our remittitur issued to determine where S.B.'s "best interests lie." (*In re Ryan K.*, *supra*, 207 Cal.App.4th at p. 599). The court did not err in doing so. Because Mother does not otherwise challenge the court's findings and orders made at the section 366.26 hearing, we affirm the orders.

9

## DISPOSITION

The December 15, 2021 order terminating parental rights is affirmed.

NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur:


CHANEY, J.


BENKE, J.*

---

*Retired Associate Justice of the Court of Appeal, Fourth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.