[Civ. No. 44921. Second Dist., Div. One. June 9, 1975.]

COFFEE-RICH, INC., et al., Plaintiffs and Appellants, v.
JERRY W. FIELDER, as Director, etc., et al.,
Defendants and Appellants.

**COUNSEL**

Argue, Freston & Myers, Edwin Freston, Louis W. Myers II, Arnall, Golden & Gregory, Ellis Arnall, Elliott H. Levitas and Mark A. Spraic for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, Carl Boronkay, Assistant Attorney General, Walter E. Wunderlich and E. Robert Wright, Deputy Attorneys General, for Defendants and Appellants.

**OPINION**

**THOMPSON, J.**—The case at bench reaches us after a decision by the superior court on remand from the Court of Appeal after reversal of a

judgment reached at trial. It emphasizes two serious deficiencies in California appellate procedure. Substantively, the case illustrates the difficulties flowing from an appellate court judgment reversing and remanding for "further proceedings consistent with this opinion" where the opinion itself is not specific on what is to be done. Procedurally, the case illustrates the deficiency inherent in the lack of a rule of court requiring that so far as feasible, the panel which gave the original opinion reversing a judgment hear the matter again on an appeal after retrial or remand. Because of the impact of the doctrine of law of the case, we cannot approach the case afresh but must act in a fashion construing the prior opinion and the meaning of the direction on remand. Recognizing a certain peril in that process, we affirm the judgment of the trial court reached after remand.

The case at bench began on November 22, 1968, with the filing of plaintiffs' complaint for declaratory and injunctive relief. Plaintiffs sought a declaration that the 1968 enactment of sections 38901 through 38987 of the Food and Agricultural Code dealing with "products resembling milk products" were either inapplicable to their product "Coffee-Rich" in its various forms, or were unconstitutional as applied to that product. They prayed that the declaration be enforced by a permanent injunction restraining defendants Department of Agriculture and its representatives (Department) from enforcing the statutes against plaintiffs.

The statutory scheme regulates "products resembling milk products." Those are defined in Food and Agricultural Code section 38912 as "any food product for human consumption [with exceptions not here applicable], which has the appearance, taste, smell, texture or color of a milk product and which, taken as a whole, bears resemblance to a milk product, or could be mistaken for a milk product." Section 38904 of the Food and Agricultural Code prohibits the use of products resembling milk products in any charitable or penal institution in California that receives state assistance. Sections 38922 and 38924 deal with standards for products resembling milk products. Sections 38931 through 38937 provide for state licensing of plants producing the products, and sections 38941 through 38946 for registration of manufacturers. Sections 38951 through 38958 deal with labeling. Section 38952 requires in part that the product "be labeled with a fanciful or brand name only," and that if it is the type of product produced by plaintiffs, the list of ingredients shall specify that it is a "nondairy product" or a "filled product." Section 38971 regulates advertising and displays. Other provisions of the

statutory scheme deal with administration. Section 38905 of the Food and Agricultural Code provides that hotels, restaurants, lunch counters, and the like may not serve products resembling milk products to the public "unless there is displayed in a prominent place in each room where the meals are served, a sign which bears the words 'beverages and products which are not milk products are served here,' in blackfaced letters of not less than four inches in height upon a white background, or unless the words are printed on a menu which is furnished to such patrons, . . . in legible type, no smaller than that which is used to describe other food items on the menu, and upon the same portion of the menu where other food items are described."

Plaintiffs manufacture a nondairy coffee whitening agent which serves the same function as a milk product when added to beverages. The product is manufactured and sold, both in hard-frozen and powdered form. Plaintiffs also produce and sell in hard-frozen form, sometimes in pressurized cans, a nondairy whipped or whippable topping for desserts and beverages. On extensive and conflicting evidence, the trial court made the following findings of fact: "16. When compared to and alongside of milk products, plaintiffs' products have distinctive differences in appearance, taste, odor, color, and texture. . . . 20. When plaintiffs' products are sold in the original labeled package (or, in the case of 'Coffee-Rich,' when in powdered form), the products do not bear resemblance to any milk product nor could they be mistaken for any milk product. 21. When plaintiffs' products are served to the consumer or are served or sold by institutions (other than in powdered form), not in labeled containers which identify the product as a non-dairy product, each of said products, taken as a whole, could be mistaken for milk products, and are subject to the Act."

The trial court invalidated portions of the statutory scheme as denials of due process, equal protection of law, and impediments to interstate commerce. It enjoined Department from enforcing the statutes declared unconstitutional and from applying the remainder of the scheme to plaintiffs' products found not to meet the definition of Food and Agricultural Code section 38912.

Both plaintiffs and Department appealed from the judgment. The resulting decision is reported in 27 Cal.App.3d 792 [104 Cal.Rptr. 252] *(Coffee-Rich I).* After a review of decisional law in related fields, the Court of Appeal concluded that the police power authorizes state regulation of products of the type produced by plaintiffs. It reversed in

part the trial court's conclusion determining that findings 16 and 20 quoted above are inconsistent with finding 21, also quoted, and that findings 16 and 20 employed a test not included within the statutory definition. The court said of finding 16: "It is logical to assume that the ordinary consumer, when comparing 'milk products' which are 'alongside' of resembling products, would be far less likely to be mistaken as to which was which than if the two types of products were not 'alongside.' . . . The assumption that every time a consumer is about to use a product resembling a milk product, there is provided for his inspection and/or use a milk product which he can see and simulaneously taste and smell . . . is one which is not warranted by any of the facts of record and substitutes a different test than that found in section 38912. Finding 16 is a far narrower test than that envisaged by the Legislature. A test so engrafted . . . must be disregarded." (27 Cal.App.3d at pp. 801-802.) The court stated further: "Finding 20 asserting that plaintiffs' products *when* packaged, '. . . do not bear resemblance to any milk product nor could they be mistaken . . .' means no more than what it specifically says. This finding says only that when the consumer sees the packaged product labeled 'non-milk product' he should not reasonably be mistaken that it is a 'milk product.' It is, however, not even equivalent to a finding that plaintiffs have complied with the labeling and advertising provisions of [the Act]. It is not a finding that the *contents* of the package are not embraced within the definition of section 38912 . . . ." (27 Cal.App.3d at p. 802.) The court in *Coffee-Rich I* continued, after drawing "all logical inferences in favor of" finding 21: "It would appear to us that the language used by the trial court 'could be mistaken for milk products' followed by the fortifying words 'and are subject to the Act' leave no doubt that at least one, if not all of the five specifics are implicitly included in the finding. [¶] . . . In addition, the record leaves no doubt as to the likelihood of public deception." (27 Cal.App.3d at p. 804.)

In summary, the Court of Appeal in *Coffee-Rich I:* (1) determined that findings 16 and 20 employed an improper test and were hence irrelevant to the extent that they focused upon immediate comparison by the consumer and upon the effect of labeling in determining confusion of product; (2) determined that finding 21 utilized a proper standard and was determinative; but (3) was silent on the consequences of the parenthetical phrase in finding 21 limiting its scope to Coffee-Rich in "other than powdered form" and language of like import in finding 20.

Turning to issues of pure law, the court held unconstitutional as not within the permissible exercise of the police power Food and Agricultur-

al Code section 38904 prohibiting the use of products resembling milk products in charitable and penal institutions, and section 38905 requiring signs and menu notices in restaurants and the like. It determined that the licensing provisions of the statute were inapplicable to plaintiffs' out-of-state facilities. The Court of Appeal held the remainder of the statutory scheme constitutional against attacks on due process, equal protection, and interferences with interstate commerce grounds.

The Court of Appeal in *Coffee-Rich I* then concluded: "The judgment is reversed and remanded with directions to modify the findings of fact, conclusions of law and the judgment (permanent injunction) in terms consistent with this opinion." (27 Cal.App.3d at p. 819.) The California Supreme Court denied hearing, and the United States Supreme Court denied a petition for certiorari.

On remand, the trial court entered a new finding of fact 14 stating: " 'Coffee-Rich' in hard-frozen form or said hard frozen product as thawed (but not powdered 'Coffee-Rich'), 'Rich's Whip Topping,' 'Sundi-Whip' and 'Spoon n' Serve,' each, when ready to be consumed, taken as a whole, could be mistaken for a milk product, although plaintiffs' products have distinctive differences from milk products in appearance, taste, odor, color or texture, and each of said products is therefore subject to [the Act]." It entered its judgment declaring that Coffee-Rich products in other than powdered form are subject to the statutory scheme, that sections 38904 and 38905 are unconstitutional and invalid, and that sections 38931 through 38937 cannot be constitutionally applied to require plaintiffs to obtain licenses for manufacturing plants located outside of California. The court declared the remaining portions of the statutory scheme valid. It enjoined enforcement by Department of the portions of the statute declared invalid.

Both plaintiffs and Department again appealed. Plaintiffs contend that new finding of fact 14 compels the conclusion that none of its products falls within the definition of section 38912, and renew the various constitutional attacks made by them upon the statutes in their original appeal. Department contends that the trial court erred in excluding powdered Coffee-Rich from the ambit of the statute, arguing that the contrary is established by the law of the case and plaintiffs' admissions in a petition for hearing. Department contends, also, that the trial court prejudicially failed to find on issues with respect to plaintiffs' labeling practice and in giving injunctive relief. Department asks that this court make findings of fact on appeal. As we construe the opinion in

*Coffee-Rich I,* the contentions of plaintiffs and Department must be rejected.

Plaintiffs' and Department's contrasting contentions on factual issues directly raise the matter of the consistency of the trial court's findings and judgment on remand with the opinion in *Coffee-Rich I.* In determining that issue, we are faced, as was the trial judge, with the need to interpret the first opinion unaided by knowledge of what was in the minds of the panel members when it was promulgated. Two questions are involved: (1) the propriety of the trial court action changing the import of what was previously in finding 16 of the first case by striking the comparison language so as to find unequivocally in new finding 14 that Coffee-Rich has distinctive differences from milk products in appearance, taste, color, or texture; and (2) the conclusion by the trial court on remand that the facts, as determined by it, establish that powdered Coffee-Rich does not meet the statutory definition of a product resembling a milk product.

As we read the opinion in *Coffee-Rich I,* the trial court lacked authority to change old finding 16 as it did in new finding 14. ▉ Where a reviewing court has remanded a matter to the trial court with directions ". . . the trial court . . . is bound to specifically carry out the instructions of the reviewing court . . . . [A]ny material variance from the explicit directions of the reviewing court is unauthorized and void." (*English* v. *Olympic Auditorium, Inc.,* 10 Cal.App.2d 196, 201-202 [52 P.2d 267]; see also *Hampton* v. *Superior Court,* 38 Cal.2d 652, 656 [242 P.2d 1].) ▉ Here the specific direction of the remand in *Coffee-Rich I* was that the trial court modify its findings of fact. The remand contained no direction that the trial court make new findings, particularly no new finding inconsistent with old finding 21 approved by the reviewing court. The language of new finding of fact 14 of the distinctive differences between Coffee-Rich and milk products represents such a material change from old finding 16 as to constitute a new finding inconsistent with the scope of the trial court's jurisdiction on remand. It is hence "unauthorized and void."

No prejudice, however, flows from the unauthorized finding of fact because its consequence is not carried into the judgment. Despite the change, the trial court determined that Coffee-Rich other than in powdered form is covered by the statutory definition of a product resembling a milk product. When new finding 14 is read in a fashion which strikes the improper addition (Code Civ. Proc., § 909), what

remains is the essential content of finding 21 at the first trial, which brought Coffee-Rich, other than in powdered form, within the statutory scheme. That holding, which is the law of the case, compels the conclusion that the trial court judgment dealing with Coffee-Rich products, in other than powdered form, is correct.

■ Department's contention that the opinion in *Coffee-Rich I* compels the conclusion that powdered Coffee-Rich also meets the definition of a product resembling a milk product is without merit, although for a different reason. The opinion in *Coffee-Rich I* mentions but does not discuss powdered Coffee-Rich despite findings 20 and 21's clear exclusion of that product from the factual classification of products that can be mistaken for milk products as defined in section 38912. The opinion, however, approves original finding 21 and utilizes the finding as the basis of its conclusion. The Court of Appeal opinion in *Coffee-Rich I* cannot be construed as a determination that the particular form of product was, as a matter of law, included within the statutory definition since the application of the definition was excluded by an approved finding of fact. Department seeks to avoid the otherwise compelled result by arguing that in their petition for hearing before the California Supreme Court in *Coffee-Rich I,* plaintiffs admitted that powdered Coffee-Rich fell within the definition of section 38912. Assuming that plaintiffs did admit the fact in their petition, the admission is not binding here. ■ The rule that an admission in a brief may be treated as dispositive (see 6 Witkin, Cal. Procedure (2d ed.) Appeal, § 428) applies only where the admission was made in the context of a prior and final case (*Estate of Stevens,* 27 Cal.2d 108, 115 [162 P.2d 918]), or where it represents an express concession in the instant phase of the case (*Williams* v. *Superior Court,* 226 Cal.App.2d 666, 674 [38 Cal.Rptr. 291]). Neither of those conditions is present here.

■ Department's contention that the trial court erred in entering a judgment on remand including injunctive relief does not question the legal basis for the injunction or seriously argue that the directions of the Court of Appeal in *Coffee-Rich I* do not permit the relief.[1] Rather, defendants claim that an injunction is not necessary because Department will follow the declaratory judgment. A party who may suffer irreparable harm from enforcement of an unconstitutional statute may be granted injunctive relief against enforcement. (*Crittenden* v. *Superior Court,* 61

---

[1]The original opinion has a heading "Findings Do Not Warrant an Injunction." The discussion which follows, however, deals with the appropriate scope of injunctive relief in light of the attack upon the trial court's findings of fact and conclusions drawn from them.

Cal.2d 565, 568 [39 Cal.Rptr. 380, 393 P.2d 692].) Here the evidence at trial supports the conclusion that Department threatened to enforce the statutory scheme in an unconstitutional manner and that enforcement in that fashion would irreparably harm plaintiffs. Department's statements in its brief that it will be bound by judicial decision cannot change the situation that was initially before the trial court. (*Pacific Gas & Elec. Co.* v. *Minnette,* 115 Cal.App.2d 698, 709 [252 P.2d 642].)

■ The other contentions of plaintiffs seek a redetermination of issues of fact and law which were before the Court of Appeal in *Coffee-Rich I,* or ask that we determine issues not before the trial court. That action is precluded.

"[W]here, upon an appeal, the supreme court [or court of appeal], in deciding the appeal, states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal . . . ." (*Tally* v. *Ganahl,* 151 Cal. 418, 421 [90 P. 1049], quoted in *People* v. *Shuey,* 13 Cal.3d 835, 841 [120 Cal.Rptr. 83, 533 P.2d 21].) While the principle of law of the case will not be applied if to do so will result in an unjust decision, "more must be shown than that a court on a subsequent appeal disagrees with a prior appellate determination" to avoid the rule. (*People* v. *Shuey, supra,* 13 Cal.3d 835, 846.)

Here plaintiffs again assert the constitutional attacks on the statutory scheme that were pressed by them at trial and on the first appeal. The law of the case precludes that attack unless the application of the rule will result in "injustice." Plaintiffs seek to bring themselves within the restricted meaning of "injustice" in the context here used by arguing that in a different case involving different parties tried after the case at bench, the side-by-side "comparison test" of the nondairy product to milk products was employed and that the method was approved on appeal in *Tip Top Foods, Inc.* v. *Lyng,* 28 Cal.App.3d 533 [104 Cal.Rptr. 718]. Plaintiffs extend their argument, contending that the proceedings in *Tip Top Foods* demonstrate a denial of equal protection of the law in a fashion not considered in *Coffee-Rich I.*

Both prongs of plaintiffs' argument fail. The reference to comparison in *Coffee-Rich I* is directed solely to finding of fact 16 as discussed in the first appeal. There, the Court of Appeal holds that "distinctive differences" between milk products and nondairy products are to be deter-

mined generally and not solely in the context of a side-by-side comparison. It is silent on whether side-by-side analysis by experts or others is of evidentiary value in determining whether, when the non-milk product is viewed alone, it possesses "distinctive differences." In a given context, the side-by-side analysis may or may not be relevant to the ultimate statutory test. If a trial court in *Tip Top Foods* admitted irrelevant evidence, that fact falls short of establishing that adherence to law of the case here will result in injustice. Similarly, since the opinion in *Tip Top Foods* makes no reference to the "comparison test" as the standard for determining "distinctive differences," it does not represent a change in the law relieving the case at bench from the strictures of the rule of law of the case.

In its opinion in *Coffee-Rich I,* the Court of Appeal dealt with a conclusion of the trial court that the labeling requirements of the act are unconstitutional in part because they conflict with a preempting federal statute. Section 38952 of the act requires that labels show only a fanciful or brand name of the product and whether it is a "nondairy" or a "filled product." 21 United States Code, section 343 (i) requires that products of the nature of Coffee-Rich be labeled "with the common or usual name of the food." The *Coffee-Rich I* court resolved the dilemma by stating that the common name for a product resembling a milk product is "nondairy product," "filled product," or the fanciful/brand name. It thus concluded that there was no conflict in the state and federal statutes. On remand, Department requested a finding of fact that none of plaintiffs' products has a common or usual name other than "the statutory generic name of 'nondairy products.' " The trial court refused the finding. That refusal is asserted by the Department to be prejudicially erroneous.

The trial court properly refused Department's proposed finding. It is unnecessary to determination of the cause at bench because the trial court on remand properly concluded that there was no conflict between state and federal law at the time of the initial trial. Moreover, the finding if made would exacerbate the problems of law of the case which plague this opinion. Common names identifying classes of products change with more than deliberate speed in this advertising-oriented era. A finding that could be construed as forever barring plaintiffs from asserting the effect of changed public conception of the common name for their products would work an unnecessary hardship.

We thus conclude on the merits that the action of the trial court must be affirmed. We emphasize, however, that the conclusion does not come

easily in view of the nature of the remanding language in *Coffee-Rich I* and the happenstance of assignment of the subsequent appeal to a panel other than that which used the language in the first place. The case at bench illustrates the need for consideration of: (1) a standard of judicial administration precluding "remand for proceedings consistent with this opinion" unless the opinion on appeal specifically states what the trial court is to do; and (2) a rule of court requiring that an appeal from a judgment rendered after remand from the Court of Appeal be heard, so far as feasible, by the panel which determined the first appeal and remanded the case. In combination, the standard and rule will permit the already strained resources of this court to be better spent.

The judgment is affirmed.

Lillie, Acting P. J., and Hanson, J., concurred.

A petition for a rehearing was denied July 3, 1975, and the petition of the plaintiffs and appellants for a hearing by the Supreme Court was denied August 6, 1975.