24 Cal.App.4th 1128 (1994)
30 Cal. Rptr.2d 1
In re CANDACE P. et al., Persons Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent,
v.
SANDRA C., Defendant and Appellant.
Docket No. D020153.
Court of Appeals of California, Fourth District, Division One.
May 3, 1994.
*1129 COUNSEL
Harry Zimmerman, under appointment by the Court of Appeal, for Defendant and Appellant.
Lloyd M. Harmon, Jr., County Counsel, Susan Strom, Chief Deputy County Counsel, and Kathryn E. Krug, Deputy County Counsel, for Plaintiff and Respondent.
Kandy Koliwer, under appointment by the Court of Appeal, for Minors.
[Opinion certified for partial publication.[1]]
*1130 OPINION
FROEHLICH, J.
Sandra C. (Mother) appeals from the juvenile court's findings and orders made at a Welfare and Institutions Code[2] section 366.26 hearing terminating her parental rights as to three of her children. The principal issue raised on appeal is that the termination order must be reversed because the court's referral to the section 366.26 hearing, achieved at a hearing held in accordance with section 366.22, was void for failure to follow the directions of this appellate court contained in a mandate order.[3]

I
Our previous order[4] was a reaction to a petition for writ of mandate brought by Mother from a section 366.21 order terminating reunification *1131 services and referring the case to a section 366.26 "selection and implementation" hearing. The effect of this trial court order was to terminate reunification efforts after only 12 months of the program. Our unpublished decision, rendered December 9, 1992, found that Mother had made progress in her parenting education, that the social service report had recommended an additional six months of the reunification program, and that "[j]ust when [M]other may have gotten her life together and was ready to participate fully in reunification the court terminated services." Our order was that the superior court vacate its order terminating reunification services and that it "enter a new and different order continuing appropriate services, including whatever assistance is needed in utilizing those services [and] [t]he time for the next six-month hearing runs from the date of filing of this opinion."
(1) The next status review hearing was held by the superior court on May 3, 1993, approximately five months after our writ opinion was issued. Mother contends the holding of this hearing was not in conformity with this court's order, which envisioned a full six months of added reunification program. Mother directs our attention to the established law which requires a trial court on remand to follow the directions of the appellate court, and provides that any material variance in the trial court's action from the appellate court's direction is unauthorized and void. (See Hampton v. Superior Court (1952) 38 Cal.2d 652, 655 [242 P.2d 1]; Coffee-Rich, Inc. v. Fielder (1975) 48 Cal. App.3d 990, 998 [122 Cal. Rptr. 302].)
The county counsel points to the lack of effective reunification efforts by Mother during the five months of added program,[5] suggesting therefrom that even if the court erred in holding an early hearing, such error could not have been prejudicial. If Mother failed to make any progress in five months, it is argued, it may be assumed that an added month of effort would not have achieved beneficial results. We do not view, however, the consideration of the effect of a "void" procedure as one permitting harmless error analysis. Particularly in the juvenile dependency sphere of litigation, we believe both parent and child are entitled to the full measure of statutory procedure, in all aspects of the program. If a parent is deprived of an adequate reunification program it is no defense, we believe, to show that the parent was so irresponsible that the program would not have had a chance of success, even had it been adequate.
The correct analysis, we believe, is the determination whether an apparent variance in the trial court's execution of the appellate ruling is "material." *1132 (See Coffee-Rich, Inc. v. Fielder, supra, 48 Cal. App.3d 990, 998; Bach v. County of Butte (1989) 215 Cal. App.3d 294, 301-302 [263 Cal. Rptr. 565]; Frankel v. Four Star International, Inc. (1980) 104 Cal. App.3d 897, 902 [163 Cal. Rptr. 902].) We believe that the juvenile court's action following this court's order did not constitute a material variance from the terms thereof. In analyzing exactly what was intended by the appellate court's order it is necessary that the order "be read in conjunction with the appellate opinion as a whole" (Bach v. County of Butte, supra, 215 Cal. App.3d at p. 302) and, in this case, that the order be considered in the framework of the statutory scheme to which it relates.
The current program for administration of dependency cases requires recurrent reviews of the status of parent and child. These reviews, commencing after the court has taken jurisdiction of the child and made its initial disposition (see §§ 300, 358), are referred to as "six-month," "twelve-month," and "eighteen-month" reviews, and hence are to be afforded roughly every six months in the process until the final selection of the child's permanent disposition.
The important point overlooked by Mother in her appeal is that these review hearings invariably are provided for periods of not more than six months. Section 366 states that the status of every child in foster care "shall be reviewed periodically as determined by the court but no less frequently than once every six months, ..." Section 366.21, dealing generally with "status review hearings," refers somewhat ambiguously to "the review hearing held six months after the initial dispositional hearing" (§ 366.21, subd. (e)), "the review hearing held 12 months after the initial dispositional hearing" (§ 366.21, subd. (f)), and "another review hearing ... [which] shall occur within 18 months of the date the child was originally taken from ... physical custody." (§ 366.21, subd. (g)(1)). Similarly, section 366.22 refers generically to "the 18-month hearing" without limiting such hearing to exactly 18 months, or precluding it from being held either before or after the magic 18-month date.
Rule 1462, California Rules of Court, dealing specifically with the 18-month hearing, states that if the child is not returned at the 12-month hearing a permanency planning hearing shall be held "no later than 18 months from the date of the original detention order." (Rule 1462(a)(1).)
The reference to recurrent "six-month" hearings surely illustrates an intention to give parents, during each period prior to recurrent review, a period of time to learn, adjust and amend their ways, which will approach six months. It would be error, we have no doubt, for a trial court to order a *1133 review hearing after a period substantially shorter than six months. The wording of the various statutes prescribing recurrent review is significant, however, in setting the 6-month, 12-month and 18-month periods as outer limits of time within which the review hearing may be held. That a six-month review hearing may be held at a time less than six months from the prior hearing seems clear.
It happens that this panel of this court is the same one that issued the prior order in this case. We nevertheless decline the potential invitation of stating definitively what we meant by our order. The order must be interpreted in terms of its literal or objective meaning  the manner in which it reasonably should be construed by a trial court judge. Such judge, we assume, will know the statutory framework of the six-month review provisions. Knowing such, he will realize that when we ordered an additional six-month period of reunification we intended no more than to require an additional periodic review approximately six months hence, and an equal period of attempted reunification. The setting of the next review hearing approximately five months, rather than a full six months, from the date of our order, did not violate this precept.
The trial court's judgment is therefore affirmed, with the exception of the judgment as to Walter P., concerning which a special disposition is made in the unpublished portion of this opinion.

II-IV[*]
.... .... .... .... .... .... .... .
Todd, Acting P.J., and Benke, J., concurred.
NOTES
[1] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II, III and IV.
[2] All statutory references are to the Welfare and Institutions Code unless otherwise specified.
[3] In accordance with established precedent from the Courts of Appeal (see, e.g., In re Amanda B. (1992) 3 Cal. App.4th 935 [4 Cal. Rptr.2d 922]; In re Taya C. (1991) 2 Cal. App.4th 1 [2 Cal. Rptr.2d 810]; In re Rebecca H. (1991) 227 Cal. App.3d 825 [278 Cal. Rptr. 185]) we would have dismissed this portion of the appeal as violative of the requirement of section 366.26, subdivision (k) that review of orders terminating reunification and referring for a section 366.26 hearing may be achieved only by writ review. The majority of the Supreme Court, however, in In re Matthew C. (1993) 6 Cal.4th 386 [24 Cal. Rptr.2d 765, 862 P.2d 765], ruled that failure to seek writ review after a section 366.21 or 366.22 order does not preclude later appeal following the judgment rendered after the section 366.26 hearing. The detrimental effect of this ruling, as pointed out by the dissenters in Matthew C. (supra, at pp. 401 & 405) is to promote delays in the eventual disposition of dependent children. This case is a good example of the problem. The hearing which produced the order now attacked as "void" was held on May 3, 1993. Had a writ petition been taken from that order it would have been filed promptly thereafter, presumably within a month or so, and we would have ruled on it with dispatch. Had we found error we would have issued our written opinion within probably 150 days, meaning that this issue would have been resolved by November of 1993. The use of ordinary appellate process following the section 366.26 hearing has resulted, even under our efficient "fast track" juvenile program, in our issuing the opinion in May of 1994, a good six months after the writ opinion would have been forthcoming. Of course, since we deny relief, it can be argued that no prejudice occurred, since this was but one issue in the appeal. This ignores the fact that this is the only issue of substance in the appeal, meaning that the appeal itself probably would not have been sought otherwise. Aside from this point, however, it is noted that had we granted relief on this issue in this appeal, the ultimate disposition of the children would have been delayed an additional six months. While six months may not be an impressive period to aged judges, it is an eternity to very young children. The avoidance of this sort of delay was a principal objective sought by the Legislature when it adopted the recent amendments to the juvenile dependency sections, including the provision for prompt writ review contained in section 366.26, subdivision (k). It is unfortunate the Legislature did not have the foresight to include in its legislation the precise language our Supreme Court now finds necessary to illustrate its otherwise clearly stated objective.
[4] Sandra C. v. Superior Court (Dec. 9, 1992) D017716 (nonpub. opn.).
[5] We do not detail the history of Mother's failed reunification program because the facts thereof are not necessary to a resolution of this published portion of our opinion. The record reveals, however, that in the added five months of reunification effort Mother continued her desultory, ineffective and irresponsible conduct supposedly directed at reunification. She missed appointments with social workers and psychologists; she did not attend court hearings; she failed on many occasions to attend scheduled visits with her children.
[*] See footnote 1, ante, page 1128.