Filed 2/23/23  Manderson-Saleh v. Regents of the U. of Cal. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| AMIRA Z. MANDERSON-SALEH, | D080203 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2018-00017346-CU-BC-CTL) |
| REGENTS OF THE UNIVERSITY OF CALIFORNIA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Kenneth J. Medel, Judge.  Affirmed as modified and remanded with directions.

Paul, Plevin, Sullivan & Connaughton; Quarles & Brady and Joanne Alnajjar Buser, for Defendant and Appellant.

David A. Kay for Plaintiff and Respondent.

Amira Z. Manderson-Saleh is the daughter of an oncology nurse, Bethlyn Manderson, who was employed by the Regents of the University of California.  Before her death in 2016, Manderson worked in the oncology unit

of the hospital at the University of California San Diego (UCSD) for 12 years. In 2014, she was diagnosed with cancer, but continued to work. Manderson initiated her retirement less than a month before her death on September 20, 2016. Days before Manderson's death, acting under a power of attorney in accordance with her mother's wishes, Manderson-Saleh submitted a claim to designate herself as the contingent-annuitant of Manderson's retirement benefits from the Regents.

The claim, however, was rejected by the Regents. Manderson-Saleh challenged that determination, eventually filing a complaint and petition for writ of mandate under Code of Civil Procedure section 1085 in the San Diego Superior Court. After the trial court denied the petition, Manderson-Saleh appealed to this court. We reversed the court's judgment and remanded the matter "with directions for the superior court to grant the mandamus petition and to issue a writ ordering the Regents to grant Manderson-Saleh's contingent-annuitant pension claim." (*Manderson-Saleh v. Regents of University of California* (2021) 60 Cal.App.5th 674, 680, review den. May 12, 2021, S268053 (*Manderson-Saleh*).)

After remand, the parties engaged in negotiations to stipulate to a judgment to satisfy this court's remittitur. When those negotiations failed, the Regents took the position that the benefits that would have been afforded to Manderson-Saleh at the time her claim was denied (designated as Option A on the Regents' form) were prohibited by regulations of the U.S. Internal Revenue Service (IRS). The Regents asserted that under those rules, as a contingent-annuitant more than ten years younger than the deceased pensioner, Manderson-Saleh was entitled only to a percentage of the benefits that were available at the time of her mother's death (designated Option C by the Regents).

2

The trial court rejected the Regents' argument and entered a judgment awarding Manderson-Saleh a lump-sum payment for the period of September 30, 2016 through the date of entry of judgment "representing retroactive Option A benefit payments ... plus pre-judgment interest," and "[f]rom the date of this judgment going forward until her death … Option A contingent annuitant payments of approximately $1700.00 per month plus cost of living raises as specified in the plan."

The Regents now appeal that order, arguing the trial court erred by imposing unlawful conditions on this court's remittitur and by requiring the Regents to pay an unlawful benefit in the form of Option A. We reject these arguments and affirm the trial court's judgment, but with a modification to allow the Regents to pay the Option A benefit or, in the alternative, to pay Option C plus direct monthly payments that are equivalent to the Option A benefit, including the same cost-of-living adjustments.

## FACTUAL AND PROCEDURAL BACKGROUND

Manderson began working at UCSD in 2004. In 2014 she was diagnosed with cancer but continued in her nursing position. "On August 25, 2016, after learning her cancer had advanced and she would die soon," Manderson contacted the Regents' retirement administration service center to initiate her retirement. (*Manderson-Saleh, supra*, 60 Cal.App.5th at p. 681.) The same day, Manderson also gave her daughter "a signed written notarized power of attorney, which was necessary because [she] was becoming increasingly unable to function because of her advanced cancer." (*Ibid*.)

Manderson retired on September 11, 2016, and the next day the Regents sent her a monthly retirement income Election Worksheet to choose how she wanted to receive her benefits, including the designation of a

3

contingent annuitant beneficiary. The Regents "had established a secure e-mail with Manderson-Saleh to expedite [Manderson]'s elections because it was aware of [her] impending death and the need to promptly formalize decisions." (*Manderson-Saleh, supra*, 60 Cal.App.5th at p. 681.) Manderson-Saleh completed the worksheet, which "designated Manderson-Saleh as [Manderson's] contingent annuitant beneficiary and identified Manderson-Saleh's birthdate," and faxed it back to the Regents. (*Ibid*.)

"[O]n Friday September 16, the [Regents] (located in Oakland) mailed [Manderson] (who lived in the San Diego area) a final 'UBEN 161 Election' form for her to formally approve her final pension election decisions made in the Election Worksheet. The prepared form … contained the information from the Election Worksheet, including the designation of Manderson-Saleh as [Manderson's] contingent beneficiary and Manderson-Saleh's birthdate." (*Manderson-Saleh, supra*, 60 Cal.App.5th at p. 682.) The form also showed that Manderson selected Option A as the manner to receive her benefits. Manderson passed away on September 20, 2016. (*Ibid*.) The Regents received the signed UBEN 161 Election form on September 26, 2016. "The next month, on October 12, the Service Center wrote to Manderson-Saleh, acknowledging [Manderson's] September 20 death, and stating that 'since [it] received the UBEN 161 after September 20, 2016, we are unable to move forward with your mother's retirement.' " (*Manderson-Saleh, supra*, 60 Cal.App.5th at p. 682.) Manderson-Saleh's attorney challenged the denial, and the Regents again denied the request to provide the benefits. (*Ibid*.)

Manderson-Saleh then filed her initial complaint in San Diego Superior Court in April 2018. The complaint asserted claims for breach of contract, breach of fiduciary duty and the duty of good faith and fair dealing, equitable estoppel, and negligent misrepresentation. The Regents demurred. Before a

ruling on the demurrer, Manderson-Saleh "filed a first amended complaint alleging a single cause of action for breach of contract, and in the alternative, petitioned for a [Code of Civil Procedure,] section 1085 writ of mandate to overturn the Regents' decision." (*Manderson-Saleh, supra*, 60 Cal.App.5th at p. 684.) "Manderson-Saleh argued that she (on [m]other's behalf) met the requirements for designating a contingent annuitant because she faxed the Election Worksheet form to the Regents on or about September 13, 2016; the Election Worksheet identified her as the contingent annuitant beneficiary; and she had been assured by the Service Center representatives that nothing further was required to make the election effective." (*Id*. at pp. 685–686.)

The Regents again demurred to the contract claims, and the trial court sustained the demurrer. (*Manderson-Saleh, supra*, 60 Cal.App.5th at p. 685.) The parties agreed Manderson-Saleh's remaining petition for writ of mandate would be tried on the record and submitted briefing and evidence on the issues presented in the petition. (*Id*. at pp. 685–691.) After a hearing on the petition, the trial court denied writ relief and entered judgment in favor of the Regents. (*Id*. at pp. 691–692.) Manderson-Saleh appealed to this court. We affirmed the trial court's ruling on the demurrer. However, we overturned the trial court's judgment, holding that Manderson-Saleh was entitled to a writ of mandate under Code of Civil Procedure section 1085 based on the "substantial compliance rule." (*Id*. at pp. 705–706.)

This court concluded that because Manderson and her daughter had substantially complied with the requirements for designating Manderson-Saleh as contingent-annuitant beneficiary, the Regents could not deny the claim without a valid reason to do so. Because no such reason appeared on the record, the trial court's judgment in favor of the Regents on Manderson-Saleh's petition for a writ of mandate was error. (*Manderson-Saleh, supra*,

5

60 Cal.App.5th at pp. 705–706.)  Accordingly, we reversed the judgment and remanded the matter to the superior court.  Our directions on remand instructed the court "to (1) vacate its order denying Manderson-Saleh's mandate petition; and (2) issue a new order and judgment granting the petition and issuing a writ directing the Regents to grant Manderson-Saleh's contingent-annuitant claim under the substantial compliance doctrine."  (*Id.* at p. 709.)

After the Supreme Court denied the Regent's petition for review and our remittitur issued, the parties engaged in negotiations to enter a stipulated judgment that complied with this court's directions.  The Regents offered to pay Manderson-Saleh benefits under Option C dating back to 2016 and prejudgment interest at the rate of 6.75%, as well as the difference between Option A and Option C benefits in the form of a lump sum or an annuity.  When Manderson-Saleh's counsel asked the Regents what the lump sum and monthly payment amounts would be for the Option C benefits and the annuity, the Regents' counsel responded that her client was unable to get a detailed quote for the annuity from its broker without a signed judgment from the court.

The Regents did explain that the Option A contingent annuitant monthly benefit would be $1,749.07, the Option C contingent annuitant monthly benefit would be $999.36, and that the lump-sum payment representing the difference between the two options would be $181,929. Manderson-Saleh selected the annuity option, and her counsel communicated the same to the Regents.  The Regents then responded that "after further consideration and assessment of risk associated with trying to secure an annuity," they would "only offer a lump-sum for the difference between the Option A and Option C benefits," rather than an annuity.

6

Manderson-Saleh rejected the offer. Her counsel told the Regents that they did not believe the value of the lump sum offered was equivalent to the payments she would have received had the claim been approved prior to Manderson's death. Instead, Manderson-Saleh's counsel obtained a quote for an annuity that would pay the approximate $700 per month difference between the Option C and Option A benefits for Manderson-Saleh's life. Manderson-Saleh's counsel proposed the Regents fund this annuity in addition to paying the Option C benefits, and a lump sum to account for the period of time between the claim denial and the final judgment.

The Regents rejected the proposal and for the first time indicated they were unwilling to pay Manderson-Saleh anything above the Option C benefits going forward because doing so would violate IRS regulations governing minimum distribution requirements for pension plans. Thereafter, the parties engaged in additional negotiations in which the Regents expressed willingness to provide Option A benefits by paying Manderson-Saleh a lump-sum she could use to fund an annuity to make up the difference between the Option A and Option C monthly amounts. The negotiations stalled a final time when the Regents declined to mitigate the tax consequences to Manderson-Saleh of receiving a lump sum, and rejected her proposal that the Regents pay her $700 per month, outside of the pension plan, with cost-of-living adjustments.

After a long-delayed status conference, at the trial court's request, the parties submitted letter briefs and competing judgments to satisfy this court's remittitur. Manderson-Saleh asserted that the trial court did not have authority to award her Option C benefits because doing so would run afoul of this court's directions. Her proposed judgment stated she was entitled to " 'Option A' contingent annuity benefits" based on this court's

7

ruling, and awarded her (1) a "lump sum representing retroactive Option A benefit payments from the [University of California Retirement Plan (UCRP)] plus pre-judgment interest at the rate of 6.75%" and (2) from the date of judgment to Manderson-Saleh's death "Option A contingent annuitant payments of approximately $1700.00 per month plus cost of living raises as specified in the plan."

The Regents, in contrast, argued that our directions only required them to pay Manderson-Saleh Option C benefits. Explaining their earlier negotiating position, the Regents asserted that "[a]lthough the Regents did not necessarily agree that any Option A benefit was owed," they attempted to negotiate "in good faith ... to achieve a stipulated judgment." The Regents argued that Manderson-Saleh's interpretation of this court's opinion—that she was entitled to the Option A benefit—"would essentially amount to an impermissible advisory opinion concerning an issue that was never before either the trial court or the appellate court (i.e., what non-UCRP funds [Manderson-Saleh] should receive or even the type of contingent annuitant benefits available to her)."[1]

The Regents submitted two proposed judgments. The first awarded Manderson-Saleh a lump sum payment of $66,623.24, plus pre-judgment interest, representing Option C benefits from September 30, 2016 to the date of entry of judgment, and Option C contingent annuitant benefits thereafter.

[1] The Regents' letter brief also explained why each proposal considered during the negotiations to reach a stipulated judgment was not feasible. With respect to the purchase of an annuity, they stated they were unwilling to gamble with their funds since the cost of such a product could not be obtained without a final judgment. With respect to the payment of a lump sum so that Manderson-Saleh could purchase the annuity, they asserted she had rejected this offer. Finally, they argued that a separate monthly payment to Manderson-Saleh was not viable because it was administratively challenging and did not offer sufficient finality.

The second proposal awarded the same, plus an additional "lump sum payment of $255,265.00 representing a disputed amount of benefits."

Before a hearing on the competing proposals, the court issued a tentative order to enter Manderson-Saleh's proposed judgment. At the hearing, the court expressed skepticism about the Regents' position. For example, in response to the Regent's assertion that requiring Option A would be a modification of this court's directions, the trial court noted that it was "not changing anything," rather it was "clarifying … [the] earlier ruling." Further, the trial court pointed out, and the Regents conceded, that the only claim form before both the trial court in the initial proceedings and this court selected Option A *and* that the Regents denied Option A benefits. At the conclusion of the hearing, the trial court took the matter under submission.

Thereafter, the court issued its order rejecting the Regents' arguments. The court explained its understating that "[t]he directive from the Court of Appeal was to GRANT Manderson-Saleh's contingent-annuitant claim. Based on the Complaint, the First Amended Complaint and Petition for Writ of Mandamus as well as the Administrative Record in this case, the petitioner's claim requested 'Option A.'" The court stated that to "rule otherwise, would, in effect, be improperly adding to the appellate court instructions." Thereafter, the court entered Manderson-Saleh's proposed judgment, awarding her "Option A contingent annuitant payments of approximately $1700.00 per month plus cost of living raises as specified in the plan."

The Regents timely appealed from the judgment.[2]

---

[2]    Before any briefing on the appeal, Manderson-Saleh filed a motion to dismiss the appeal as frivolous, which we denied.

DISCUSSION

The Regents contend that by specifying that Manderson-Saleh was entitled to Option A benefits, the trial court added an unlawful condition to this court's remittitur. The Regents also assert that the trial court erred by entering a judgment that requires them to pay Manderson-Saleh "an unlawful benefit" that is prohibited by federal law and that infringes on their authority to administer retirement benefits for their employees.

I

The issues on appeal are governed by the law that applies after a reversal by the court of appeal, which is accompanied by direction requiring specific proceedings on remand. " 'A reviewing court has authority to "affirm, reverse, or modify any judgment or order appealed from, and may direct the proper judgment or order to be entered, or direct a new trial or further proceedings to be had." (Code Civ. Proc., § 43.) The order of the reviewing court is contained in its remittitur, which defines the scope of the jurisdiction of the court to which the matter is returned.' [Citations.] 'The trial court is empowered to act only in accordance with the direction of the reviewing court; action which does not conform to those directions is void.' " (*Ayyad v. Sprint Spectrum, L.P.* (2012) 210 Cal.App.4th 851, 859 (*Ayyad*); see *Hampton v. Superior Court* (1952) 38 Cal.2d 652, 655 ["When there has been a decision upon appeal, the trial court is reinvested with jurisdiction of the cause, but only such jurisdiction as is defined by the terms of the remittitur. The trial court is empowered to act only in accordance with the direction of the reviewing court; action which does not conform to those directions is void."] (*Hampton*).)

"[T]he rule requiring a trial court to follow the terms of the remittitur is jurisdictional in nature. [Citation.] The issues the trial court may address in

the remand proceedings are therefore limited to those specified in the reviewing court's directions, and if the reviewing court does not direct the trial court to take a particular action or make a particular determination, the trial court is not authorized to do so." (*Ayyad, supra*, 210 Cal.App.4th at pp. 859–860.) "On remand, the trial court must adhere to the reviewing court's directions even if the lower court is convinced the appellate court's decision is wrong or has 'been impaired by subsequent decisions.' [Citation.] The directions must be followed even if the judgment on which the Court of Appeal's decision is based is unquestionably legally erroneous. [Citation.] In short, when an appellate court remands a matter with directions governing the proceedings on remand, 'those directions are binding on the trial court and *must* be followed. Any material variance from the directions is unauthorized and void.' " (*Id*. at p. 860.)

Further, "[i]t is unnecessary and inappropriate for an appellate court to attempt to envision and to set forth in detail the entire universe of matters prohibited by its directions on remand." (*Ayyad, supra*, 210 Cal.App.4th at p. 863.) Thus, if there is ambiguity in the directions, the trial court must interpret them "in accordance with the views, reasoning, and holdings expressed in the opinion as a whole." (*In re Justin S.* (2007) 150 Cal.App.4th 1426, 1435.) "Whether the trial court has correctly interpreted an appellate opinion is an issue of law subject to de novo review. In interpreting the language of a judicial opinion, the appellate court looks to the wording of the dispositional language, construing these directions 'in conjunction with the opinion as a whole.' " (*Ducoing Management, Inc. v. Superior Court* (2015) 234 Cal.App.4th 306, 313.) Only if the trial court's variance from this court's directions is "material," is reversal appropriate. (*In re Candace P.* (1994) 24 Cal.App.4th 1128, 1131.)

11

## II

The Regents argue the trial court's judgment exceeded our remittitur by adding Option A benefits to our direction that they pay Manderson-Saleh contingent-annuitant benefits. They assert the addition "amounts to a judicially created amendment requiring the Plan to pay a benefit that is unlawful." We disagree. Because the issue was not litigated and the only benefit at issue in the underlying litigation was the Option A benefit, the trial court's judgment awarding that benefit fell squarely within "the views, reasoning, and holdings expressed in [our] opinion as a whole." (*In re Justin S., supra*, 150 Cal.App.4th at p. 1435.)

The trial court correctly assessed this court's opinion and imposed a judgment that conformed to the disposition and remittitur. As the trial court stated in its minute order "[t]he 'UBEN 161 Election Form,' which the Regents contended was not timely received back from [Manderson], was prepared by the Regents and sent to petitioner. It indicated the Payment Option of 'Alternative Payment Option A.' That was the basis for petitioner's claim, which was granted by the Court of Appeal."

Because no other benefit option was raised or considered during the course of the lawsuit, the trial court was required to, and correctly did, enter a judgment for Option A benefits. Contrary to the Regents' assertion, had the trial court adopted the Regents' position and entered a judgment for Option C benefits, it would have run afoul of the law by modifying the directions this court issued. (See *English v. Olympic Auditorium* (1935) 10 Cal.App.2d 196, 201 ["A trial court may not exceed the specific directions of a court of review in remanding a cause after a reversal of the judgment on appeal and add thereto conditions which it assumes the reviewing court should have included."].)

12

The case cited by the trial court in its order, *Skaggs v. City of Los Angeles* (1956) 138 Cal.App.2d 269 (*Skaggs*), considered a similar sequence of events and supports our conclusion.  In *Skaggs*, the trial court granted a petition for writ of mandate brought by a police officer challenging the City of Los Angeles's denial of his pension benefits.  (*Id*. at pp. 270–271.)  The trial court's judgment included interest on back payments awarded by the court.  (*Ibid*.)  The judgment was appealed to the Supreme Court by both parties.  However, the city's appeal did not challenge the award of interest (nor had the city raised the issue in the lower court litigation), despite the Civil Code's prohibition of such interest awards against municipalities.  (*Id*. at p. 271.)

The Supreme Court reversed a portion of the trial court's judgment, but affirmed the portion that awarded interest on back payments.  (*Skaggs, supra*, 138 Cal.App.2d at p. 271.)  After additional proceedings in the trial court on remand, the court entered a judgment based on the city's argument that eliminated the interest previously awarded to the plaintiff.  (*Id*. at pp. 271–272.)  The plaintiff appealed, and the Court of Appeal concluded that the trial court's second judgment eliminating the interest award had exceeded the trial court's authority on remand.  (*Id*. at pp. 272–273.)

The *Skaggs* court held, "[t]he fact that the Supreme Court did not expressly pass upon the interest feature of the judgment does not affect this matter.  Its judgment did affirm the portion of the judgment which required defendants to pay interest on past due pension installments.  If, due to the city's neglect to direct its attention to this phase of the judgment of the lower court, the Supreme Court failed to pass upon this question, the city's remedy was to petition for a rehearing, and it was not for the trial court, on the

13

second trial, to attempt to change the specific directions contained in the remittitur."[3]  (*Skaggs*, *supra*, 138 Cal.App.2d. at pp. 272–273.)

The same principles apply here.  If the Regents thought they could not provide Manderson-Saleh with the Option A benefits because of changes in the federal tax rules, the Regents' remedy was to petition this court for rehearing to clarify or modify the relief afforded in our disposition.  After remand, the trial court did not have authority to modify the judgment in the manner advanced by the Regents.  Put simply, the trial court lacked authority to award Option C benefits and its failure to do so was not error.

### III

The Regents' assertion that the trial court erred by entering an "unlawful" judgment fails for the same reasons.  The Regents asked the trial court, and now ask this court, to evaluate whether the directions we gave the trial court in our earlier opinion, i.e. to grant judgment in favor of Manderson-Saleh and direct the Regents to grant Manderson-Saleh's contingent-annuitant claim, were in violation of the law.  As discussed, the trial court had no authority to make this determination.  Rather, its role was limited to implementing our directions, which it did correctly.  With respect to this court's authority to address the Regents' ability to provide Option A

---

[3]  In support of its argument, the Regents cite *Pomona Police Officers' Ass'n v. City of Pomona* (1997) 58 Cal.App4th 578.  Unlike this case, however, *Pomona* involved a *direct* legal challenge by a collective bargaining association seeking to compel a municipality to amend its contracts with the Public Employees' Retirement System in order to provide certain benefits. The trial court denied the petition, and the Court of Appeal affirmed, holding it could not require the municipality to "enter into a particular, judicially created collective bargaining agreement." (*Id*. at p. 590.)  *Pomona* has no impact on the issues at play here; the case does not address a trial court's modification of a direction after remand by a higher court.

benefits, we agree with Manderson-Saleh that the principles of waiver and estoppel apply.

In support of their argument that the trial court's judgment is unlawful, the Regents explain that in 2017, after Manderson's death, it "began eligibility-testing benefit claims made by contingent-annuitant beneficiaries based on the Minimum Distribution Incidental Benefit rule (the 'MDIB rule')."[4] This rule, according to the Regents, was adopted by the IRS

---

[4] The Regents filed three requests, all unopposed, for judicial notice in the present appeal. The first, which accompanied its opposition to Manderson-Saleh's unsuccessful motion to dismiss, sought judicial notice of "UC Retirement 1976 Tier Summary Plan Description Summary Plan Description and 26 C.F.R. § 1.401." We denied the request as to the plan summary and granted the request as to the treasury regulation. In the request filed with its opening brief, the Regents seek judicial notice of (1) excerpts of the University of California Retirement Plan documents dated July 2016, July 2019, and July 2020; (2) an IRS bulletin, No. 2004-26, dated June 26, 2004, which the Regents assert contains the "final ruling of the IRS related to the MDIB rule as it was implemented in 2004;" (3) proposed regulations of the treasury, dated July 27, 1987, "relat[ed] to required distributions from qualified plans, individual retirement plans, and section 403(b) annuity contracts, custodial accounts, and retirement income accounts;" (4) a U.S. House of Representatives congressional report, which the Regents asserts contains "background to the MDIB rule" dated June 23, 1984; and (5) excerpts of UC Retirement Plan 1976 Tier Summary Plan Descriptions dated 2018 and 2014 (though they appear the same, it is unclear if the 2018 document is the same summary submitted in the Regents' earlier request for judicial notice). In their final request for judicial notice, filed in connection with their reply brief, the Regents request judicial notice of a treasury rulemaking finalized in August 2009 that amends the grandfather provision for government plans contained in the 2004 regulations that are part of the Regents' other request for judicial notice.

in 2004, and limited a retirement plan's "ability to pay funds to non-spouses more than ten years younger than the retiree ...." The Regents assert that, based on this rule, "the only non-spouse beneficiary able to take 'Option A' or 'full continuance' (100%) benefits is a person who is ten years or less apart from the retiree."

The Regents state that "[p]rior to July 2017, the University did not strictly test contingent-annuity benefit claims for conformity with the MDIB rule." Thus, in 2016, at the time the Regents rejected Manderson's request to make Manderson-Saleh her contingent-annuitant beneficiary, the Regents would have paid Manderson-Saleh the Option A benefit if the claim had been granted. However, "beginning in July 2017, [t]he Regents adjusted the retirement benefit payment practice to be consistent with the MDIB rule," resulting in the Regents "no longer permitting 'Option A' contingent-annuitant benefits to non-spouses who were more than ten years younger than the retiree."

Based on this change to its plan, the Regents argue they cannot provide Option A benefits to Manderson-Saleh without running afoul of federal tax regulations, which they assert would jeopardize the plan's "tax-qualified status with the IRS," as well as risk "IRS penalties, audits and/or fiduciary

We grant the Regents' request for judicial notice with respect to the treasury regulations and related documents, numbered (2), (3), and (4) in the prior paragraph and contained in the Regents' supplemental request filed with the reply brief. (Evid. Code § 452, subd. (c) ["Judicial notice may be taken of … Official acts of the legislative, executive, and judicial departments of the United States …."].) The request is also granted as to the excerpts from the retirement plan documents, numbered (1) in the prior paragraph. (See *California State Employees' Assn. v. Flournoy* (1973) 32 Cal.App.3d 219, 233, fn. 10 [taking judicial notice of personnel rules of the Regents based on character of the Regents "as a 'statewide administrative agency' "].) As before, the request is denied as to the summaries of the plan, numbered (5) above.

duty claims from Plan members based on The Regents' non-compliance."[5] The Regents also argue that because the judgment requiring them to pay Option A benefits conflicts with the MDIB rule, which is contained in a federal tax regulation, the supremacy clause of the U.S .Constitution requires us to conform the judgment to comply with that rule.

In response to the Regents' argument, Manderson-Saleh asserts that any challenge to the relief she sought based on IRS rules was waived. Manderson-Saleh points out that prior to this court's opinion, the Regents never argued that she was not entitled to the benefit selection contained in her claim form. It was not until the judgment was reversed and the parties began negotiating a stipulated judgment to satisfy the remittitur that the Regents first asserted they could not satisfy the judgment because of their obligations under the IRS rules.

Whether the supremacy clause requires modification of the judgment was not an issue properly before the trial court. Rather, the trial court had no authority to pass on the question concerning the illegality of ordering Option A benefits. (See *Hampton, supra*, 38 Cal.2d at p. 656 [" 'The order of the appellate court as stated in the remittitur, 'is decisive of the character of the judgment to which the appellant is entitled. The lower court cannot reopen the case on the facts, allow the filing of amended or supplemental pleadings, nor retry the case, and if it should do so, the judgment rendered

[5]     At the hearing on the parties' competing proposed judgments, the Regents repeatedly declined to answer the trial court's questions about what benefits were provided to contingent annuitants that were similarly situated to Manderson-Saleh, i.e. beneficiaries who were provided Option A benefits before the retirement plan began conforming to the tax law in 2017, after that change. Manderson-Saleh's counsel pointed out that the factual question was not properly before the court because the Regents had failed to raise this issue during the initial trial court proceedings.

17

thereon would be void.' "].)  As discussed, the court was required to follow the directions from this court and enter a writ of mandate directing the Regents to grant the claim for benefits made by Manderson-Saleh, acting under the power of attorney given by her mother, before her mother's death.  As the trial court correctly concluded, that claim was for Option A, not Option C, benefits.[6]

We also agree with Manderson-Saleh that the concepts of waiver and estoppel apply to preclude this court from addressing the Regents' argument.

---

[6]    The Regents' reliance on *San Diego City Firefighters, Local 145 v. Bd. of Admin. of San Diego City Employees Ret. Sys.* (2012) 206 Cal.App.4th 594 is misplaced.  There, the parties were litigating the impact of changes to federal tax law that limited the benefits received by certain employees under an existing memorandum of understanding with the union representing the employees.  There was no assertion in the case that the issue was not properly before the courts considering it.  Here, the issue was not litigated by the Regents in the underlying lawsuit despite the fact that the change had been implemented before Manderson-Saleh filed her petition for writ of mandate.  This difference in the procedural posture of the cases is critical, and fatal, to the Regents' reliance on *San Diego Firefighters*.

Likewise, the Regents' citations to *In re Marriage of Shelstead* (1998) 66 Cal.App.4th 893, *Doe v. Wilson* (1997) 57 Cal.App.4th 296, and *Gates v. Municipal Court* (1992) 9 Cal.App.4th 45 are inapposite.  In *Shelstead*, this court considered the issue of whether certain retirement benefits awarded to the employee's spouse in a divorce proceeding were preempted by federal law. (*Shelstead,* at pp. 895–896.)  Unlike here, the preemption issue was brought squarely before the court by the parties throughout the trial and appellate proceedings.  (*Id*. at pp. 896–898.)

In *Doe v. Wilson*, the First District considered issues of federal preemption related to the legality of a trial court order enjoining emergency state regulations promulgated to conform state law with governing federal law.  (*Doe v. Wilson, supra*, 57 Cal.App.4th at pp. 301–303.)  *Gates v. Municipal Court* addressed a contempt order issued against the Orange County sheriff as a result of his compliance with a federal court order in a class action lawsuit arising from overcrowding in the Orange County jail. (*Gates v. Municipal Court, supra*, 9 Cal.App.4th at pp. 48–49.)  *Doe v. Wilson* and *Gates v. Municipal Court* have no bearing on the issues here.

The Regents assert the issue was not waived because they did not arise until after the remittitur issued. This assertion, however, is belied by the Regents' own briefing. They acknowledge the MDIB rule went into effect in 2004 and that they only began conforming their benefits to the rule in July 2017, before this lawsuit was filed in 2018. Had the issue been raised during the initial litigation or in a petition for rehearing after our decision, it could have been considered and adjudicated.

"The rule is well settled that the theory upon which a case is tried must be adhered to on appeal. A party is not permitted to change his position and adopt a new and different theory on appeal. To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant." (*Ernst v. Searle* (1933) 218 Cal. 233, 240–241; *Kantlehner v. Bisceglia* (1951) 102 Cal.App.2d 1, 6 ["This rule has frequently been applied where one theory of damages was acquiesced in at the trial and appellants sought to shift to another theory of damages on appeal."].) The unfairness motivating this rule is even more pronounced in this case, where the issue was not raised until well after the first appeal.

If the Regents' position was that the benefits contained in the claim being pursued by Manderson-Saleh were unavailable because of their tax implications, it was incumbent on the Regents to present that defense in the initial trial court proceedings or, at the very least, in a petition for rehearing after our earlier decision. The Regents' failure to raise the argument during the earlier proceedings dooms it. (See *Truck Ins. Exchange v. AMCO Ins. Co.* (2020) 56 Cal.App.5th 619, 635 [" ' "[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court." ' "].)

19

Finally, although we agree with Manderson-Saleh that she is entitled to Option A benefits, we see no reason to prevent the Regents from satisfying the judgment with payment outside of the plan that is equivalent to the Option A benefit Manderson-Saleh would have received had her claim been granted at the time it was made. Manderson-Saleh herself makes no objection to this alternative, and the Regents provided the trial court with an alternative proposed judgment containing similar terms.[7]

Accordingly, on remand from this decision the trial court is directed to enter a judgment that provides the Regents with the option to pay Manderson-Saleh either Option A plan benefits *or* to pay her the equivalent of Option A benefits by paying Option C benefits plus direct monthly payments of the difference between Option A and Option C, including cost-of-living adjustments.

IV

After briefing was complete, Manderson-Saleh filed a motion for sanctions asserting that the Regents' appeal is frivolous. (Code Civ. Proc., § 907 ["When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just."].) Our test is the following: "[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that

---

[7] The second proposed judgment provided for a lump sum payment to Manderson-Saleh that appears to be based on a price quote she received from her financial advisor for an annuity that would pay her roughly the same amount she would be paid monthly under Option A, minus cost-of-living adjustments.

the appeal is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.)

Although Manderson-Saleh asserts that the Regents filed their appeal to delay entry of a final judgment in this years-long lawsuit, the documents she included in the appellate record show ongoing, and good-faith negotiations by both parties to reach an agreement on a stipulated judgment throughout the year after the remittitur issued. Further, the arguments advanced by the Regents on appeal are not frivolous. While we agree with Manderson-Saleh that the trial court correctly rejected the Regents' proposed judgments, we cannot say that "any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty, supra*, 31 Cal.3d at p. 650.) We therefore decline to grant sanctions in this instance.

## DISPOSITION

The judgment is affirmed with modification. On remand, the trial court is directed to enter a modified judgment directing the Regents within 30 days of the entry of judgment (1): to pay Manderson-Saleh a lump sum representing retroactive Option A benefit payments from the UCRP, plus pre-judgment interest at the rate of 6.75%, for the period of September 30, 2016 through the date of entry of the judgment; and (2) to, from the date of entry of judgment going forward until her death, begin payment of either Option A plan benefits *or* the equivalent of Option A benefits by paying Option C plan benefits plus direct monthly payments equivalent to the difference between Option A and Option C, including cost-of-living adjustments mirroring those provided by Option A plan benefits. The costs of appeal are awarded to Manderson-Saleh.

McCONNELL, P. J.

WE CONCUR:

HUFFMAN, J.

BUCHANAN, J.