Filed 7/22/24  In re Sabrina T. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re SABRINA T., et al., Persons Coming Under the Juvenile Court Law. | B329043 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 22CCJP03724 A–C) |
| Plaintiff and Respondent, | |
| v. | |
| J.V.T., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Peter R. Navarro, Commissioner.  Affirmed.

Paul Couenhoven, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Bryan Mercke, Deputy County Counsel, for Plaintiff and Respondent.

_____

J.V.T. (mother) appeals from orders of the juvenile court removing her three children from her care, denying her request to modify her case plan by eliminating a substance abuse program requirement, and granting Matthew T., Sr. (father) sole physical custody of the children at the conclusion of the dependency case. Mother contends these orders were in error because there was not clear and convincing evidence that she abused substances or that any substance abuse affected her ability to care for the children, and she consistently tested negative for illegal drugs in the five months prior to the case's termination. We find no error, and thus we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     Background.

Mother and father have three children:  Sabrina (born in May 2012), Faith (born in May 2015), and Matthew, Jr. (born in November 2016).  When this case began, mother and father were divorced and living separately, and they shared physical custody of the children pursuant to a family law order.

In August 2022, the Los Angeles County Department of Children and Family Services (DCFS) received a referral alleging that the mobile home where mother and the children lived was roach infested and uninhabitable.  A maintenance worker at the mobile home park told a social worker that he previously had

2

served an eviction notice on mother because the mobile home was so dirty, and recently someone had gone to mother's home but would not enter it because it was " 'filthy with roaches.' " Mother admitted her home was a wreck, but said it was because she was packing to move and the children did not want to clean up their mess. Mother cried frequently during the interview and said at times she could not stop herself from crying. She sometimes thought the children would be better off without her, but she did not have a plan to harm herself. Mother denied using illegal drugs and said she had not used marijuana in several weeks. She agreed to move with the children to the maternal grandparents' home and to drug test the following day.

Faith and Sabrina said they shared a bedroom in mother's mobile home, but they slept on the living room floor because their bedroom was filled with boxes and bags. There were boxes stacked in other rooms as well, and if the girls were not careful, they knocked the boxes to the floor. Mother had two emotional support dogs who were not toilet trained. There was dog urine and feces in the kitchen and hallway, and mother " 'steps in pee a lot and gets angry.' " Faith said mother and the children slept a lot during the day, and mother's boyfriend, Alex, played games on his phone. When she was hungry, Faith would " 'grab a snack and try not to step in poop.' " Mother, Alex, or Sabrina made meals.

Sabrina said mother sometimes spoke of killing herself; when mother did so, Sabrina would call maternal grandmother to give " 'emotional support.' " Sabrina often hid her feelings, but her anxiety caused her physical symptoms. She explained that at times " 'her stomach hurts which makes her want to throw up, it makes her hands shake, her heart rate slows down and her skin

gets red and 'swelly.' She stated, 'I forget; get things mixed up. I start to pinch myself, bite my tongue, poke my arm with a toothbrush.' " She had recently cut herself with scissors because mother was having suicidal thoughts.

On September 8, 2022, mother tested negative for all substances. Mother's therapist reported that mother suffered from depression, had suicidal thoughts, and would benefit from more intensive therapy. Mother had not had Sabrina assessed by a therapist, saying Sabrina had not understood what she was saying and was just sad and scared.

## II.    Petition; jurisdiction and disposition hearing.

In September 2022, DCFS filed a juvenile petition pursuant to Welfare and Institutions Code[1] section 300, subdivisions (b) and (c) that, as subsequently amended, alleged that the parents endangered Sabrina's mental health through their contentious child custody dispute (counts b-1, c-1), and mother had a history of mental and emotional problems, including a history of depression, anxiety, and suicidal ideation, for which she had not obtained treatment and which endangered the children's health and safety (count b-3). At an October 2022 detention hearing, the juvenile court ordered the children placed with the parents under DCFS supervision.

In November 2022, DCFS opined that the children were at high risk of abuse or neglect given the frequent discord between the parents, mother's untreated mental health issues, and Sabrina's episodes of self-harm and suicidal ideation. However,

---

[1]    All subsequent undesignated statutory references are to the Welfare and Institutions Code.

4

DCFS believed the children could safely remain with the parents under DCFS supervision.

In November 2022, the juvenile court sustained counts b-1, b-3, and c-1 of the petition as amended and declared the children juvenile court dependents, but allowed the children to remain in the parents' physical custody. The court ordered mother to participate in mental health treatment, including a psychiatric and psychological assessment, to take all prescribed psychotropic medications, to participate in individual and family counseling, to take a parenting class, and to submit to five random and on-demand drug tests. The court ordered father to do individual and family counseling.

### III.   Subsequent and supplemental petitions.

Mother tested positive for methamphetamines on December 20, 2022 while the children were in her care. She made excuses why she could not test on January 17 and 19, 2023, tested negative for all substances on January 20, 2023, tested positive for methamphetamines on January 26, 2023, and failed to test on February 1, 2023.

Mother expressed surprise at the positive tests, telling the social worker she did not use drugs. She suggested she may have tested positive because the testing site had contaminated her urine samples.

On February 2, 2023, the juvenile court ordered the children detained from mother. On February 6, 2023, DCFS filed a subsequent petition (§ 342) alleging that mother had a history of substance abuse and was a current abuser of methamphetamines, which rendered her incapable of providing the children with regular care and supervision (count b-1), and a supplemental petition (§ 387) alleging that mother had failed to

5

comply with the court's prior order to drug test on-demand and had tested positive for methamphetamines while the children were in her care. The juvenile court ordered mother to participate in a full substance abuse program.

Mother tested negative for all substances on February 9 and February 23, 2023.

Father told a social worker that in 2018 he found a pipe in mother's sunglasses case; at about that time, mother lost 100 pounds in seven months, which led father to suspect she was using methamphetamines. He asked mother to drug test; she refused and made a domestic violence report to DCFS. Father said he had always suspected mother was using drugs because her house was in such disarray, but the children never reported any drug use.

In March 2023, the juvenile court sustained the allegations of the subsequent and supplemental petitions and ordered the children removed from mother pursuant to section 361. The court rejected mother's explanation of her positive drug tests, finding that it "is not reasonable to believe that someone sabotaged her sample or that . . . the positive results were other than voluntary knowing use of methamphetamines."

### III.   Six-month review and mother's section 388 petition.

Mother tested negative for all substances twice in March and twice in May 2023. However, an April 12, 2023 test was cancelled after a test center employee reported that she saw a tube hanging down between mother's legs when mother lifted her sweater to begin testing, and mother failed to show up for an April 24, 2023 test.

Mother told a social worker that what the test center employee had seen was hospital tape, explaining that she had

injured her foot getting into a car and had hospital tape on her side. The social worker asked to see the injury; mother lifted her shirt, but the social worker could not see any injury. Mother then said the injury was under her bra and she would take a picture and send it and her hospital paperwork to the social worker. She never did.

In June 2023, DCFS reported that mother had not shown proof of enrollment or participation in a substance abuse program, a 12-step program, conjoint counseling, or psychological or psychiatric assessments. Mother provided a certificate of completion of a parenting program, but the social worker could not reach anyone at the program to confirm mother's participation; mother also reported she had upcoming counseling and medication management sessions, but did not give the social worker contact information for her providers. Mother visited the children inconsistently, sometimes canceling visits, arriving late, or ending visits early.

DCFS reported that the children were stable in father's home, which was clean and organized. Sabrina said she was happier and was no longer having thoughts of hurting herself. She wanted to live with father, but was afraid it would hurt mother's feelings to tell her so. Faith and Matthew both said they wanted live with mother because they missed her and their old schools, but they would be okay living with father. DCFS noted father had been willing to address DCFS's concerns, had taken advantage of the support DCFS provided, and had kept the children safe. DCFS therefore recommended that the court terminate its jurisdiction with an order giving the parents joint legal custody, father sole physical custody, and mother monitored visits.

7

On June 22, 2023, mother filed a section 388 petition asking the court to strike the substance abuse program from her case plan. Mother asserted: "[Mother] has tested negative for all substances on 2/23/2023; 3/10/23; 3/24/2023; 5/2/2023; 5/16/2023. [Mother] does not have a substance abuse diagnosis. [Mother] does [not] meet medical necessity allowing enrollment in a substance abuse program. [Mother] attempted to enroll in LACADA, Tarzana Treatment Center, and other programs to no avail." Mother further asserted a change of order would be in the children's best interests because "[mother] has shown consistent negative tests which confirms [mother] does not suffer from [a] substance abuse diagnosis. Children can be safe in the [mother's] care. DCFS['s] most recent reports regarding [mother's] visits with the children do not show any evidence [mother] is under the influence around the children or acting in a manner that places the children at risk of harm. Faith and Matthew want to return to their [mother's] care and Sabrina wants to continue to see her [mother]."

The court held a six-month review hearing on June 23, 2023. Mother requested that the court continue the matter for three months or, alternatively, grant mother and father joint legal and physical custody. Father requested sole physical custody with monitored visits for mother, and the children's counsel submitted on DCFS's recommendation to grant father sole physical custody and the parents joint legal custody. After hearing argument, the court terminated its jurisdiction, denied mother's section 388 petition, entered a custody order giving the parents joint legal custody, father sole physical custody, and mother monitored visits three times per week. The custody order stated: "Any change to this order is to be sought through Family

Law court.  In order for mother to petition the Family Law court, mother must show that she is drug free by way of an assessment by a legitimate state licensed drug program.  Mother is required to show proof of psychotropic medication compliance."

Mother timely appealed from the March 2023 jurisdictional and dispositional orders and the June 2023 custody order.  We consolidated the two appeals.

## DISCUSSION

Mother contends the juvenile court erred by (1) removing the children from her physical custody, (2) denying her request to eliminate the substance abuse program requirement from her case plan, and (3) granting father sole physical custody.  As we discuss, the first two contentions are moot, and the third lacks merit.

### I. Mother's challenges to the orders removing the children from her custody and denying her request to modify her case plan are moot.

Mother challenges the juvenile court's orders removing the children from her physical custody and denying her request to modify her case plan.  Specifically, mother contends (1) there was no clear and convincing evidence that she abused substances or that any substance use impacted her ability to safely care for the children, and (2) the juvenile court erred by refusing to remove the substance abuse program requirement from her case plan because mother consistently tested negative for drugs and was ineligible to participate in a drug treatment program.  DCFS responds that both of mother's claims are moot because the challenged orders have been superseded by a final custody order. DCFS is correct.

9

Our Supreme Court has explained that appellate courts are "tasked with the duty ' "to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." ' " (*In re D.P.* (2023) 14 Cal.5th 266, 276 (*D.P.*).) Thus, "[a] case becomes moot when events ' "render[ ] it impossible for [a] court, if it should decide the case in favor of plaintiff, to grant him any effect[ive] relief." ' " (*Ibid.*) Relief is effective only if the plaintiff complains of an "ongoing" harm that is "redressable or capable of being rectified by the outcome plaintiff seeks." (*Ibid.*)

We must " ' "decide on a case-by-case basis whether subsequent events in a juvenile dependency matter make a case moot and whether [our] decision would affect the outcome in a subsequent proceeding." ' " (*D.P., supra,* 14 Cal.5th at p. 276.) "[T]he critical factor in considering whether a dependency appeal is moot is whether the appellate court can provide any effective relief if it finds reversible error." (*In re N.S.* (2016) 245 Cal.App.4th 53, 60, quoted by *D.P.,* at p. 276.) "[R]elief is effective when it 'can have a practical, tangible impact on the parties' conduct or legal status.' " (*D.P.,* at p. 277.)

In the present case, neither order mother challenges remains in effect. The March 2023 removal order was superseded by the June 2023 custody order, and thus even were we to reverse the March 2023 order, the children would remain in father's sole physical custody pursuant to the subsequent custody order. (Cf. *In re Julien H.* (2016) 3 Cal.App.5th 1084, 1088, fn. 7 ["To the extent Father challenges the court's pre-detention removal and detention orders that challenge is moot because

those orders were superseded by the disposition orders and there is no effectual relief that may be provided by this court"].) Similarly, mother's case plan is inoperative because a parent is not required to complete a case plan after jurisdiction terminates. (§ 362, subd. (d) [juvenile court "may direct any reasonable orders to the parents or guardians of the child *who is the subject of any proceedings under this chapter*"], italics added; *In re Silvia R.* (2008) 159 Cal.App.4th 337, 347 [section 362 "limits the persons for whom reunification and welfare services may be ordered [to] parents and guardians *of the dependent child*"], italics added.) Thus, mother no longer is subject to either of the orders she challenges.

Moreover, neither of the challenged orders "forms the basis for an order that continues to impact [mother's] rights." (*D.P.*, *supra*, 14 Cal.5th at p. 276.) Removing the children from mother under section 361 was not a statutory predicate to granting father sole physical custody under section 362.4, and thus the section 362.4 order would remain operative even if the removal order were reversed.[2] The juvenile court's March 2023 order that

---

[2] In contrast, the jurisdictional findings *were* a necessary legal predicate to the section 362.4 custody order because the juvenile court could not have entered the custody order had it not adjudicated the children juvenile court dependents. (See, e.g., *In re Gael C.* (2023) 96 Cal.App.5th 220, 223 [appellant "is no doubt correct that the jurisdiction findings impacted the custody orders entered by the juvenile court"]; *In re Joshua C.* (1994) 24 Cal.App.4th 1544, 1548 ["[i]f the jurisdictional basis for orders restricting appellant's visitation with, and custody of, [child] is found by direct appeal to be faulty, the orders would be invalid"].) However, mother has not challenged those jurisdictional findings in this appeal.

11

mother complete a substance abuse program also did not form the basis for any current order. Notwithstanding mother's failure to complete a court-ordered substance abuse program before the juvenile court terminated its jurisdiction, the juvenile court did not include such a program in the final custody order. Instead, the court required only that, to seek a change of custody order from a family court, mother "show that she is drug free *by way of an assessment* by a legitimate state licensed drug program." (Italics added.) Mother thus is not adversely affected by either of the orders she challenges, and so a reversal would not provide mother any effective relief.

Citing *In re Rashad D.* (2021) 63 Cal.App.5th 156 (*Rashad D.*), mother urges that her appeals from the removal order and order denying her section 388 petition are not moot because she also appealed from the final custody order. Not so. *Rashad D.* held that after dependency jurisdiction has terminated, a jurisdiction/disposition order is subject to appellate review only if two things are true: (1) the jurisdiction/ disposition order "directly results in an adverse [final] juvenile custody order," and (2) the parent "appeal[s] not only from the jurisdiction finding and disposition order but also from the orders terminating jurisdiction and modifying the parent's prior custody status." (*Rashad D.*, at p. 159.) Applying that test to the case before it, *Rashad D.* held that a parent's appeal from jurisdictional findings was moot because although the parent continued to be adversely affected by the findings—absent sustained jurisdictional findings, the juvenile court would not have had jurisdiction to enter the final custody order—the parent had not appealed from the custody order. As a result, the Court of Appeal could not reverse or modify that order. (*Id.* at p. 165.)

The present case is distinguishable from *Rashad D.* Mother is correct that she filed a notice of appeal from the order terminating juvenile court jurisdiction, and thus she satisfied the second *Rashad D.* requirement. However, as discussed above, neither of the challenged orders forms the basis for an order that continues to impact mother's rights. Thus, mother has not satisfied the first *Rashad D.* requirement because neither order "directly result[ed] in [the] adverse [final] juvenile custody order." (*Rashad D.*, *supra*, 63 Cal.App.5th at p. 159.)

For all the foregoing reasons, we could not provide mother any effective relief even were we to reverse the March 2023 removal order and/or the order denying mother's section 388 petition. Mother's challenges to those orders therefore are moot. (See *In re D.P.*, *supra*, 14 Cal.5th at p. 282.)

## II. The juvenile court did not abuse its discretion by granting father sole physical custody of the children.

Mother contends the juvenile court erred by granting father sole physical custody of the children because there was no evidence she abused substances or that her alleged substance use affected her ability to care for the children. Mother's contention lacks merit, as we discuss.

### A. Legal principles.

Section 362.4 governs a juvenile court's authority to issue custody and visitation orders when it terminates its jurisdiction at a section 364 hearing. "When terminating its jurisdiction over a child who has been declared a dependent child of the court, section 362.4 authorizes the juvenile court to issue a custody and visitation order (commonly referred to as an 'exit order') that will become part of the relevant family law file and remain in effect in

13

the family law action 'until modified or terminated by a subsequent order.' " (*In re T.S.* (2020) 52 Cal.App.5th 503, 513; see *In re Ryan K.* (2012) 207 Cal.App.4th 591, 594, fn. 5 [when terminating jurisdiction, juvenile court may "issue an order 'determining the custody of, or visitation with, the child,' " which "may be enforced or modified by the family court" and is "sometimes referred to as 'family law' orders or 'exit' orders"].)

" '[I]n making exit orders, the juvenile court must look at the best interests of the child.' (*In re John W.* (1996) 41 Cal.App.4th 961, 973; see also *In re T.S.* (2020) 52 Cal.App.5th 503, 513 (*T.S.*) ['When making a custody determination under section 362.4, "the court's focus and primary consideration must always be the best interests of the child" '], quoting *In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268 (*Nicholas H.*).) The court must be guided by the totality of the circumstances and issue orders that are in the child's best interests. (*In re Chantal S.* [(1996)] 13 Cal.4th [196], 201; *In re Roger S.* (1992) 4 Cal.App.4th 25, 30–31.) Because juvenile dependency proceedings arise when children are subject to or at risk of abuse or neglect, '[t]he presumption of parental fitness that underlies custody law in the family court just does not apply. . . . Rather the juvenile court, which has been intimately involved in the protection of the child, is best situated to make custody determinations based on the best interests of the child without any preferences or presumptions.' (*In re Jennifer R.* (1993) 14 Cal.App.4th 704, 712 (*Jennifer R.*); accord *Chantal S., supra,* 13 Cal.4th at p. 206.)" (*In re J.M.* (2023) 89 Cal.App.5th 95, 112.)

" '[T]he juvenile court has broad discretion to make custody [and visitation] orders when it terminates jurisdiction in a dependency case (§ 362.4).' (*Nicholas H., supra,* 112 Cal.App.4th

14

at p. 265, fn. 4.) We review the juvenile court's exit orders for an abuse of that discretion. (See, e.g., *In re Maya L.* (2014) 232 Cal.App.4th 81, 102; *Jennifer R.*, *supra*, 14 Cal.App.4th at p. 711; see also *In re Stephanie M.* (1994) 7 Cal.4th 295, 318.) We will not disturb the juvenile court's decision ' " 'unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.' " ' (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 318.)" (*In re J.M.*, *supra*, 89 Cal.App.5th at pp. 112–113.)

### B. Analysis.

Mother contends the juvenile court abused its discretion by granting father sole physical custody because there was no evidence that her alleged substance use endangered the children. In support, mother cites section 361, subdivision (d), which says in relevant part that a dependent child "shall not be taken from the physical custody of his or her parents . . . unless the juvenile court finds clear and convincing evidence that there would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the child for the parent . . . to live with the child." But section 361 governs removal of a child from parental custody during the pendency of a dependency case, *not* entry of a final custody order at the conclusion of a case. (See *In re J.M.*, *supra*, 89 Cal.App.5th at p. 113 [section 361 "does not apply to custody and visitation determinations made at a section 364 review hearing concurrent with the termination of juvenile court jurisdiction"].) Final custody orders are instead

15

governed by section 362.4, which "does not require a finding of detriment under any circumstances." (*In re J.M.*, at p. 113.)[3]

As we have discussed, we may reverse the juvenile court's final custody order only if we conclude that the juvenile court abused its discretion by granting father sole physical custody under section 362.4—that is, if substantial evidence did not support the juvenile court's conclusion that awarding sole physical custody to father was in the children's best interests. Mother makes no contention in this regard, and thus any such contention is forfeited. (E.g., *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived"].) In any event, we find no abuse of discretion because substantial evidence supported the juvenile court's order. The juvenile court sustained allegations in the supplemental and subsequent petition that mother used methamphetamines in December 2022 and January 2023, and mother has not challenged those findings on appeal. Contrary to her contentions on appeal, moreover, the evidence did not compel the conclusion

---

[3] Section 361, subdivision (d) governs children's removal from noncustodial parents (i.e., parents "with whom the child did not reside at the time the petition was initiated"), while section 361, subdivision (c) governs removal from custodial parents (i.e., parents "with whom the child resides at the time the petition was initiated"). Because the children were living with mother when the supplemental petitions were filed, section 361, subdivision (c), not section 361, subdivision (d), governed the children's initial removal from mother. The distinction is immaterial for our purposes, however, because as we discuss, the final custody order was governed by section 362.4, not section 361.

that mother was drug-free in the five months that preceded the June 2023 hearing: Although she tested negative for all substances twice in March and twice in May 2023, a test center employee suspected her of attempting to tamper with a test on April 12, 2023, suggesting that mother may have been using drugs at that time, and she failed to test two weeks later. Mother also did not demonstrate in the juvenile court that she had addressed the issues that brought the family to the juvenile court's attention—namely, her mental health challenges and difficulty maintaining a clean and sanitary home. In contrast, there was evidence that all three children were stable and safe in father's home, and Sabrina's mental health had improved substantially since she was removed from mother's care. The juvenile court thus did not err in concluding that awarding father sole physical custody was in the children's best interests.

## DISPOSITION

The juvenile court's orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

EGERTON, J.

ADAMS, J.